**ADMIRAL PACKING COMPANY,**
Plaintiff–Appellee,

v.

**ROBERT F. KENNEDY FARM
WORKERS MEDICAL PLAN,**
et al., Defendant.

**Appeal of JUAN DE LA CRUZ
FARMWORKERS PENSION
FUND PLAN, Defendant.**

No. 87–5636.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1988.

Decided May 10, 1989.

George C. Lazar, Lindley, Lazar & Scales, San Diego, Cal., for defendant-appellant.

Wayne A. Hersh, Finkle, Hersh & Stoll, Irvine, Cal., for plaintiff-appellee.

Before SCHROEDER, REINHARDT and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

This action involves contributions made by an agricultural employer, Admiral Packing Company (Admiral), to medical and pension fund plans on behalf of a Union representative, Miguel Garcia, after termination of a collective bargaining agreement. The plans are multiemployer trusts within the purview of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (1982 and Supp. IV 1986) (ERISA).

Admiral had a collective bargaining agreement with the agricultural employees until October 22, 1982. Despite termination of the agreement on that date, Ad-

miral continued to contribute to the benefit plans on Garcia's behalf.

On October 10, 1983, Admiral terminated Garcia as the paid union representative. Over one year later, on October 22, 1984, Admiral requested refunds for the mistaken payments Admiral claimed it made from October 22, 1982, until October 10, 1983, on Garcia's behalf. The benefit plans' administrator declined to make the refund.

On October 8, 1985, Admiral filed a complaint in federal court seeking a return of the benefit contributions under section 403(c)(2)(A)(ii) of ERISA, 29 U.S.C. § 1103(c)(2)(A)(ii) (1982). Section 403(c)(2)(A)(ii) provides that contributions may be returned to an employer when they are:

> [M]ade by an employer to a multiemployer plan by a mistake of fact or law ..., paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.[1]

The district court concluded that section 403(c)(2)(A)(ii) preempted any other statute of limitation in the pension plan documents, and that Admiral was entitled to a refund unless there were equitable considerations militating against a refund. Because the medical plan assumed the risk that Garcia would make claims against it as a result of the contributions, the court concluded that this was an equitable consideration that precluded a refund. With respect to the pension fund plan, the court found no equitable considerations to preclude a refund, and ordered $250 to be refunded to Admiral.

None of the parties were awarded attorneys' fees.

The pension plan timely appeals.

## STANDARD OF REVIEW

■ The interpretation and application of the provisions of ERISA are reviewed de novo. *Trustees of Amalgamated Ins. Fund v. Geltman Indus.*, 784 F.2d 926, 929 (9th Cir.), *cert. denied*, 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986). Questions of preemption and denial of refund claims under ERISA are interpretations of law subject to de novo review. *Chase v. Trustees of Teamsters Pension Trust Fund*, 753 F.2d 744, 746 (9th Cir.1985).

## DISCUSSION

### 1. Whether The Refund Claim Is Time-Barred

■ The pension plan asserts that Admiral's action for a refund of mistakenly-made contributions is barred by the one-year statute of limitations stated in the trust document. We agree. Article 2, Section 2 of the Pension Fund Declaration of Trust states:

> Nothing herein shall be construed to prohibit the return of an Employer Contribution made by mistake of fact, provided such return is accomplished within one year after the mistaken payment is made.

Article 2, Section 2 is derived from the collective bargaining agreement, which provides a detailed description of the parties' agreement regarding refunds of benefit contributions (emphasis added):

> In the event Company discovers that it has made an overpayment to any Plan due to a mistake of fact, Company shall promptly notify such Plan of that fact with specifics as to the date or dates of the alleged overpayment(s), the mistake of fact responsible for such overpayment(s), and the amount(s) involved. The Company shall submit, together with such notice of the fact that it claims an overpayment was made, such amended monthly report or reports as may be required to correct the Plan's records. *Provided Company so notifies Plan of each overpayment, due to a mistake of*

---

**1.** Paragraph (1), 29 U.S.C. § 1103(c)(1), provides:

[T]he assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

*fact, within one (1) year of the date the overpayment was made,* and provided such mistake of fact is demonstrated, Plan will either refund to Company the overpayment involved, or authorize Company to take an offset from current contributions due to recover its overpayment, as Plan shall specify or Company shall be entitled to pursue legal remedies for reimbursement.... *Company shall not be entitled to any refund, credit, offset, deduction or other form of reimbursement for any overpayment which is not discovered and reported to Plan within one (1) year of the date on which it is made.*

The district court, citing no authority, held that the one-year limitation for obtaining refunds in the trust document and in the collective bargaining agreement was preempted by section 403(c)(2)(A)(ii) of ERISA. The court found the action timely, because section 403(c)(2)(A)(ii) permits an action to be brought "within six months after the plan administrator has made a determination on a claim for a refund." The plan administrator denied the claim on July 15, 1985, and the complaint was filed on October 8, 1985, less than three months later.

The issue is whether section 403(c)(2)(A)(ii) can relieve an employer of a more restrictive provision in a trust document. We have held that where the rules affecting ... pension benefits [are] fixed by the collective bargaining process

> ... the rule in question is insulated from judicial review under ERISA.... This result is in accord with a basic principle of labor law, viz, that the parties to collective bargaining agreements generally are free to fashion whatever type of employment contract on which they are able to come to agreement.

*White v. Distributors Ass'n Warehousemen's Pension,* 751 F.2d 1068, 1071 (9th Cir.1985), *West v. Greyhound Corp.,* 813 F.2d 951, 956 (9th Cir.1987). We observed further that " 'when neither the collective-

bargaining process nor its end product violates any command of Congress, a federal court has no authority to modify the substantive terms of a collective-bargaining contract.' " *White,* 751 F.2d at 1071 (declining to review rules regarding pension benefits for "reasonableness") (quoting *United Mine Workers of America Health & Retirement Funds v. Robinson,* 455 U.S. 562, 576, 102 S.Ct. 1226, 1234, 71 L.Ed. 2d 419 (1982). *See also Central Tool v. IAM Nat. Pension Fund,* 811 F.2d 651, 660 & n. 60 (D.C.Cir.1987) (declining to review reasonableness of rule established by trustees when the rule is part and parcel of collective bargaining).

The one-year time limitation set forth in the trust document and in the collective bargaining agreement does not violate any command of Congress. One court has observed that the language of section 403(c)(2)(A) is permissive,

> setting the broadest limits Congress was willing to extend to employers to seek refunds of erroneous contributions. The parties may derogate from that subsection to the extent that they choose to be more restrictive, but they may not exceed the limits set by Congress.

*Electricians Health, Welfare, & Pension Plans v. Gulino,* 594 F.Supp. 1265, 1272 (M.D.La.1984).

The one-year limitation here is more restrictive than the statutory provision because the one-year limitation requires Admiral to act within a shorter time to obtain a refund of mistakenly-paid contributions. To qualify for a refund, Admiral had to act within one year of the date it made the mistaken contributions. Garcia was terminated on October 10, 1983. Not until more than one year later, on October 22, 1984, did Admiral demand a refund from the plans. Therefore, the one-year limitation precludes a refund.[2]

Conversely, Section 403(c)(2)(A)(ii) has a broader time limitation, because a cause of action would not even accrue under this section until the plan administrator denied

---

**2.** We dismiss Admiral's argument that language in Section 1, Article 7 of the trust document obliterates the one-year limitation period set forth in Article 2. Article 7 is totally unrelated as it deals only with the fiduciary duties of the trustees to the fund participants.

the refund on July 15, 1985, well beyond the one-year time limit specified by the collective bargaining agreement and the trust documents. *Cf. Gulino,* 594 F.Supp. at 1273 (concluding that section 403(c)(2)(A)(ii) eliminated a one-year limitations period in a pension trust agreement "in favor of the shorter period provided by the statute," where the statutory time was shorter than the one-year limitation provided in a trust agreement).

■ The district court may not set aside rules affecting pension benefits where they are fixed by the terms of a collective bargaining agreement and violate no command of Congress. *White,* 751 F.2d at 1071. Therefore, the district court's decision that section 403(c)(2)(A)(ii) preempts the one-year limitation in the collective bargaining agreement and in the trust document is erroneous. The award of a refund to Admiral was improper and is reversed.

2. Attorney's Fees

Section 502(g) of ERISA, 29 U.S.C. § 1132(g)(1) (1982), provides for an award of attorney's fees in this case

> In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

"In determining whether to award fees to either plaintiffs or defendants [under section 1132(g)(1)], courts should consider the guidelines stated in *Hummell.*" *Carpenters S. Cal. Admin. Corp. v. Russell,* 726 F.2d 1410, 1416 (9th Cir.1984). The *Hummell* guidelines under section 1132(g)(1) are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries to an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Carpenters,* 726 F.2d at 1415 & n. 9 (citing *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980)).

We considered the *Hummell* guidelines and, given the disposition of this case, find that the pension plan is entitled to attorney's fees. We remand for the district court to determine the proper amount of the award.

REVERSED AND REMANDED.