WHITWORTH BROTHERS STORAGE COMPANY, Plaintiff–Appellant,

v.

CENTRAL STATES, SOUTHEAST & SOUTHWEST AREAS PENSION FUND; Board of Trustees, Central States, Southeast & Southwest Areas Pension Fund; and Executive Director, Central States, Southeast & Southwest Areas Pension Fund, Defendants–Appellees.

No. 92–3085.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1992.

Decided Jan. 11, 1993.

Rehearing Denied Feb. 16, 1993.

Harlan D. Karp (briefed), Eugene I. Selker (argued and briefed), Selker & Furber, Cleveland, OH, for plaintiff-appellant.

Thomas C. Nyhan, Francis J. Carey, Joan P. Simmons, William W. Leathem (argued and briefed), James D. O'Connell, Central States, Southeast & Southwest Areas Health & Welfare & Pension Funds, Rosemont, IL, for defendants-appellees.

Before: MILBURN and BATCHELDER, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiff-appellant, Whitworth Brothers Storage Company, appeals the district court's grant of summary judgment to defendants-appellees, Central States, Southeast & Southwest Areas Pension Fund; Board of Trustees, Central States, Southeast & Southwest Areas Pension Fund; and Executive Director, Central States, Southeast & Southwest Areas Pension Fund, in this action for restitution under federal common law for a refund of contributions plaintiff mistakenly made to Central States. For the following reasons, we affirm in part, reverse in part, and remand the case to the district court for further proceedings.

## I.

Defendant-appellee, Central States Southeast and Southwest Areas Pension Fund ("Central States" or "the Fund"), is a multiemployer employee pension benefit plan as defined in 29 U.S.C. § 1002(2)(A) of the Employee Retirement Income Security Act ("ERISA") of 1974. Plaintiff-appellant, Whitworth Brothers Storage Company ("Whitworth Bros. Storage" or "the Company"), is an employer that paid contributions to the Fund for the accounts of employees William Whitworth [1] and Ernest Whitworth in the mistaken belief that they were employees who were eligible to receive pension benefits from the Fund.

William and Ernest Whitworth were co-owners, shareholders, and officers of Whitworth Bros. Storage, a family-operated business begun by their father. The two brothers drove trucks and carried furniture and were members of the Teamsters and Local Union 392.

Plaintiff claims that the mistake underlying this lawsuit began in 1955 when a union official informed the Whitworth brothers that as members of the Teamsters Union they were covered by the Union's collective bargaining agreement that required contributions to Central States for pension benefits. Neither plaintiff nor defendants sought verification of William and

---

1. William Whitworth is now deceased.

Ernest Whitworths' eligibility to receive pension benefits from the Fund. The Fund accepted Whitworth Bros. Storage's representation that it owed the Fund monthly contributions for Ernest and William Whitworth and billed them accordingly.[2] Whitworth Bros. Storage alleges that for over twenty-five years, it made contributions totaling $20,000 to the Fund on behalf of William and Ernest Whitworth.[3]

Seeking to retire in late 1978 or early 1979, William Whitworth wrote to the Board of Trustees ("the Trustees") of the Fund regarding his pension. On January 26, 1979, the Director of Pension History at Central States, Mr. Bey, wrote William Whitworth indicating that inasmuch as his employer was Whitworth Bros. Storage, the Fund believed that he may not be an employee covered by the collective bargaining agreement who was eligible to receive pension benefits. The letter asked whether he held any ownership in the Company and informed him that owners and managers normally did not fall within the category of employees covered by the collective bargaining agreement. (Appendix, p. 51).

On February 3, 1979, William Whitworth responded to Mr. Bey:

Re: My Status:

There is no change in my status here since I joined the union in 1934. I carried furniture for a living then, with my father and brother.... So for the past 45 years I have been a member in good standing and still am a working, paying member.

What I want to know is: when I decide not to carry furniture any more, what can I expect from my union's pension fund to which I have contributed since its inception.

Note: This also concerns my brother (Ernest Whitworth) with whom I am presently working.

/s/ Wm. Whitworth

(Appendix, p. 121).

The record is unclear about the manner in which Central States responded as a letter that Central States wrote to Local 392 on March 14, 1979 (a copy of which was sent to William Whitworth) is not a part of the record. Central States continued billing Whitworth Bros. Storage for contributions on behalf of both brothers.

On March 1, 1980, William Whitworth ceased working and Whitworth Bros. Storage ceased making contributions to Central States on his behalf. On his March 30, 1980 bill, William Whitworth wrote: "I retired as of March 1, 1980. Waiting for pension ck." On June 16, 1980, Central States wrote William Whitworth regarding his application for pension benefits, asking him if he had the right to hire or fire while employed at Whitworth Bros. Storage. (Appendix, p. 54). On August 20, 1980, Central States wrote William Whitworth telling him that his eligibility to receive pension benefits had not been established and that his application was being placed in the Fund's rejection files. The letter stated that if additional information were submitted, the application would be reopened. (Appendix, pp. 52–53).

On November 4, 1980, plaintiff Whitworth Bros. Storage obtained counsel, who wrote to Central States, demanding that Central States pay William Whitworth pension benefits as a beneficiary or return to the Company all contributions toward pension benefits made to the Fund on his behalf. Central States received this letter on November 10, 1980. (Appendix, p. 56).

After further correspondence between plaintiff's counsel and the Fund, on May 19, 1981, Whitworth Bros. Storage conceded in a letter that since William Whitworth had been paid as an owner, not as an hourly employee of the Teamsters Union, he was not covered by the collective bar-

---

**2.** The billing process was relatively routine. Central States sent a monthly or quarterly statement; one copy was sent back to Central States and the remittance was sent to a bank; one copy was sent to Local Union 392; and one copy was the employer's.

**3.** Until the Glenville riots in 1969, Whitworth Bros. Storage paid pension contributions for two or three other employees. Since 1969, the only two persons for whom contributions were made were William and Ernest Whitworth.

gaining agreement as an employee and not eligible to receive pension benefits.[4] The letter repeated a demand for a refund of the contributions paid by mistake by the Company on William Whitworth's behalf. (Appendix, p. 57).

On July 23, 1981, Central States denied Whitworth Bros. Storage's request for a refund of $7,890 covering the period of May 31, 1964 through March 1, 1980 for contributions made on behalf of William Whitworth. It is Central States' policy to limit refunds for contributions made by a mistake of fact or law to the one year prior to a formal request for a refund. Pursuant to this policy, Central States granted plaintiff Whitworth Bros. Storage a refund of $384.00 for the contributions made on behalf of William Whitworth between November 11, 1979 and March 1, 1980. Central States stated that it had received a refund request in regard to contributions made on behalf of William Whitworth on November 10, 1980 from Eugene Selker, attorney for the Company, and that pursuant to its one-year refund limitation policy, it would allow a refund for contributions made from November 11, 1979 (one year prior to the date of the November 10, 1980 refund request) until March 1, 1980, when the Company ceased making contributions on behalf of William Whitworth. (Appendix, pp. 59–62).

In July 1981, after the refund request on behalf of William Whitworth was denied, Whitworth Bros. Storage ceased making contributions on behalf of Ernest Whitworth without ever requesting a refund of the contributions previously made by the Company on his behalf.

Central States continued assessing and billing Whitworth Bros. Storage for contributions for Ernest Whitworth through May 1983. Until August 1984, Central States billed Whitworth Bros. Storage monthly for previous delinquent contributions, assessed interest penalties, and threatened collection action.[5]

On September 15, 1983, plaintiff Whitworth Bros. Storage filed a complaint against defendant Central States in the United States District Court for the Northern District of Ohio. On Count I, plaintiff sought an $11,000 refund for contributions it had made on behalf of William Whitworth from January 1, 1975 through March 1980 and on behalf of Ernest Whitworth from January 1, 1975 through July 1981 in the mistaken belief that William and Ernest Whitworth were employees covered by the collective bargaining agreement who were eligible to receive pension benefits. A refund of contributions mistakenly made is permissible under 29 U.S.C. § 1103(c)(2)(A)(ii), a provision of ERISA enacted on January 1, 1975.

On Count II, plaintiff sought a refund of approximately $9,000 for contributions it had made from 1955 through December 31, 1974 on behalf of William and Ernest Whitworth in the mistaken belief that they were employees covered by the collective bargaining agreement. Plaintiff invoked jurisdiction for a claim for these pre-ERISA contributions pursuant to a pendent state law action for restitution.

On Count III, plaintiff sought a declaratory judgment on whether the Company owed back contributions to the Fund for the period from August 1981 through May 1983 in regard to Ernest Whitworth.

On January 15, 1985, the district court dismissed the complaint for lack of subject matter jurisdiction, holding that under 29 U.S.C. § 1132(a)(1), employers are not authorized to maintain an ERISA action. On appeal, this court in *Whitworth Brothers Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 794

---

4. Some employer-owners are eligible to participate in the Fund if they work full time in the bargaining unit and are subject to all its conditions including being paid the hourly union wage. The Whitworth brothers were not paid an hourly union wage.

5. Central States operates under a self-reporting system in which an employer is responsible for

notifying the Fund of the change in the status of any employee. Otherwise, the Fund continues billing the employer for all previous employees for whom contributions have been made. Because the Fund never received any notification concerning Ernest Whitworth, it continued billing Whitworth Bros. Storage for contributions on his behalf.

F.2d 221 (6th Cir.), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986) (*"Whitworth I"*) reversed and remanded. This court held that the plaintiff-employer, Whitworth Bros. Storage, had a federal common law cause of action to recover the contributions in the nature of an equitable action for restitution. *Id.* at 236. On remand, Central States moved for summary judgment, which the district court granted on December 19, 1991 in regard to Counts I and II. The district court denied the pendent state law claim for contributions made prior to the enactment of ERISA on January 1, 1975 based on the contract between the parties. In regard to the post-ERISA contributions made after January 1, 1975, the district court found that Central States' one-year refund limitation policy was not arbitrary and capricious. The district court held that the Trustees' decision to deny the refund request for post-ERISA contributions made on behalf of William Whitworth outside the Fund's one-year refund limitation rule was not arbitrary and capricious. In regard to Ernest Whitworth, the court held no refund was due for the post-ERISA contributions made on his behalf after January 1, 1975, because Ernest Whitworth never made a timely request for a refund. On Count III, the district court ruled that Whitworth Bros. Storage had made contributions to the Fund by mistake as William and Ernest Whitworth were not employees covered by the collective bargaining agreement who were eligible to receive pension benefits from the Fund. Therefore, no delinquent contributions were due for the period from August 1981 through May 1983 on behalf of Ernest Whitworth. Accordingly, judgment was entered for plaintiff on Count III.[6]

Plaintiff filed a timely notice of appeal in regard to Counts I and II on January 15, 1992.

6. Since there was no cross-appeal by Central States on Count III, this issue is not contested before this court.

7. This amendment was a provision of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA").

8. Section 403(c)(1) of ERISA sets forth the general rule that "the assets of a [multiemployer

## II.

In considering the issues presented, we must first examine the applicable law. Central States is an employee pension benefit plan as defined by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461. Resolution of the claims for a refund in the present case depends upon the applicability and meaning of an amendment to ERISA enacted on September 26, 1980.[7] ERISA, effective for an employer's contributions to a pension fund made after January 1, 1975, preempts all state law concerning employment benefits. 29 U.S.C. § 1144(a). Before September 26, 1980, 29 U.S.C. § 1103(c)(2)(A) permitted a pension plan to return contributions made by an employer under a mistake of fact within one year after the payment of the contributions.[8] For purposes of this case, if Congress had not changed the law in 1980, a refund of the payments made by Whitworth Bros. Storage by mistake would not have been permitted; most courts would have characterized the contributions made by the Company on behalf of William and Ernest Whitworth as a mistake of law rather than a mistake of fact, and prior to 1980, ERISA did not permit a refund for contributions made by mistake of law. *See, e.g., Martin v. Hamil,* 608 F.2d 725, 729 (7th Cir.1979) (contributions made on the basis of erroneous advice from a union official are based on a mistake of law); *Chase v. Trustees of the Western Conference of Teamsters Pension Trust Fund,* 753 F.2d 744, 750–51 (9th Cir.1985) (it is a mistake of law when contributions are made on behalf of an individual on the assumption that the individual is an employee, when, in fact, the individual is ineligible to participate in the pension fund).

pension] plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries...." 29 U.S.C. § 1103(c)(1). This sweeping prohibition is tempered by a number of limited exceptions, one of which is 29 U.S.C. § 1103(c)(2)(A), the provision at issue in the present case.

On September 26, 1980, Congress amended § 1103(c)(2)(A) of ERISA to read, in pertinent part, as follows:

> In the case of a contribution ... made by an employer to a multiemployer plan by a mistake of fact or law ..., paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.

29 U.S.C. § 1103(c)(2)(A)(ii). Further, the following subsection of that amendment provides:

> The amendment made by this section shall take effect on January 1, 1975, except that in the case of contributions received by a collectively bargained plan maintained by more than one employer before the date of enactment of this Act [Sept. 26, 1980], any determination by the plan administrator that any such contribution was made by mistake of fact or law before such date shall be deemed to have been made on such date of enactment.

Pub.L. No. 96–364, § 410(c), 94 Stat. 1208, 1308 (1980). These provisions clearly indicate that the trustees of a multiemployer pension plan, such as Central States, may return contributions made by employers under a mistake of fact or law within six months after the plan administrator determines that the contributions were mistakenly made. The subsection states that the amendment may be applied retroactively to any contributions made subsequent to January 1, 1975, the date of the enactment of ERISA.

The amendment greatly expanded the scope of section 1103(c)(2)(A) for multiemployer pension plans: it added mistake of law as a basis for a refund of contributions as well as a mistake of fact and eliminated the one-year limitation for the return of contributions.[9] There is no express limitation as to the number of mistaken contributions that can be refunded under 29 U.S.C. § 1103(c)(2)(A)(ii), which provides merely that the contributions must be returned within six months after the plan administrator determines that the contributions were made by mistake. The language of section 1103 is thus permissive, simply allowing, but not mandating, pension funds to return contributions. There is no explanation in the legislative history for the elimination of the one-year limitation and the substitution of the six-months provision. This liberalization of the statutory provision for the refund of contributions, however, might encourage more employer and employee pension plan participation, and thus is certainly not inconsistent with the MPPAA's intent to foster plan continuation and growth. H.R.Rep. No. 869(I), 96th Cong. 2nd Sess. 4, *reprinted in* 1980 U.S.C.C.A.N. 2918, 2919.

In the present case, Whitworth Bros. Storage seeks restitution of contributions made before and after the effective date of ERISA—January 1, 1975. Therefore, in the complaint, Count I requests a refund for contributions made after the effective date of ERISA pursuant to 29 U.S.C. § 1103(c)(2)(A)(ii), and Count II requests a refund for contributions made prior to the enactment of ERISA in a pendent state law claim for restitution.

### III.

■ We will first address the pendent state law claim for the refund of pre-ERISA contributions made on behalf of William and Ernest Whitworth before January 1, 1975. Plaintiff Whitworth Bros. Storage contends that its claim for pre-ERISA contributions comes within the purview of ERISA, which was enacted on January 1, 1975, because a cause of action

---

9. The mistake of law provision was added because "the requirement that a contribution be made due to a mistake of fact in order to be returned to the employer [of a multiemployer plan] is too narrow." Joint Explanation of S. 1076: Multiemployer Pension Plan Amendments Act of 1980, 126 Cong.Rec.S. 10130 (July 29, 1980).

The provision which allows contributions to be returned within six months of the date on which the plan administrator determines there was a mistake originated in S. 209, 96th Cong., 1st Sess., 125 Cong.Rec. 927 (1979). *See* 126 Cong.Rec.S. 10101 (daily ed. July 29, 1980) (statement of Sen. Williams).

accrues upon discovery of the mistake and the mistake was not discovered until 1981.

This argument is to no avail. In *Crews v. Central States, Southeast and Southwest Areas Pension Fund*, 788 F.2d 332 (6th Cir.1986), this court reviewed a similar claim demanding a refund for contributions made pre-ERISA (i.e., prior to January 1, 1975), which had been denied by Central States. In *Crews*, this court held that no state law claim remained in the action and that the recovery of pre-ERISA contributions was barred by Central States' contract, which stated that there was a one-year limitation on the recovery of refunds for contributions made by mistake. *Id.* at 336–37. The same contractual provision was in effect for the pre-ERISA contributions at issue in the present case. Our decision in *Crews* is controlling, and the district court properly determined that no pre-ERISA state law claim to recover pre–1975 contributions remained in the action. The district court is affirmed on this issue.

### IV.

We must next decide whether the district court erred in ruling, on a motion for summary judgment, that Central States' one-year refund limitation policy in regard to the post-ERISA contributions made after January 1, 1975 is not arbitrary and capricious. The district court's grant of summary judgment is reviewed *de novo*. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). Thus, we must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988).

▆ Plaintiff argues that the Fund's one-year refund limitation policy is arbitrary and capricious because it is supported by no actuarial data indicating that the Fund will be harmed if overpayments or mistaken contributions made outside of one year are returned. Plaintiff argues that the Fund has been unjustly enriched by

keeping the contributions made on behalf of William and Ernest Whitworth as the Fund does not have to pay pension benefits on their behalf and the Company receives nothing in return for the amounts it paid by mistake.

Central States argues that it need not return the post-ERISA contributions plaintiff made after January 1, 1975, because the collective bargaining agreement specified that there was a one-year refund limitation on the return of contributions made by an employer under a mistake of fact or law, and the limitation is not arbitrary and capricious. The refund provision in the trust agreement reads:

> In no event shall the Employers, directly or indirectly, receive any refund on contributions made by them to the Trust, except a refund of contributions made by a mistake of fact or law (other than a mistake about plan qualification or tax-exempt status pursuant to the Internal Revenue Service Code) as determined by the Trustees if application therefor is received within one year after payment of the contributions. In no event shall the Employers, directly or indirectly, participate in the disposition of the Trust Fund or receive any benefits from the Trust Fund.

Article XIV, Section I of the Trust Agreement. Central States argues that our decision in *Crews* is controlling, because in *Crews*, this court upheld Central States' denial of a refund for post-ERISA contributions under a trust agreement provision almost identical to the one at issue in the present case.

We disagree that *Crews* is controlling in regard to this issue. Although the facts in *Crews* are similar to those of the present case, *Crews* was decided under a prior provision of ERISA. Crews had been informed by the Teamsters that he was required to join the union and contribute to its pension funds. Because Crews was a 50 percent owner of the company that was the employer who had contributed to the Fund, he was not an employee eligible to receive pension benefits. Central States, therefore, rejected Crews' application for

pension benefits and also denied the company's request for a refund of the contributions it had made on his behalf. 788 F.2d at 333–34.

Although in *Crews* a panel of this court upheld the denial of the refund, the panel never considered whether Central States' one-year refund limitation policy in regard to post-ERISA contributions is arbitrary and capricious. Instead, in *Crews*, this court upheld Central States' denial of the refund request based on the applicable statutory provision of ERISA in effect at the time. *Id.* at 337. In *Crews*, Central States denied the claim for a refund in the year 1978 when a prior provision of ERISA was in effect. *Id.* at 335. The prior provision of ERISA stated that a benefit plan could refund contributions made by mistake of fact, but could not give a refund for contributions made by mistake of law. This court held that the employer in *Crews* had made erroneous contributions based on a mistake of law. *Id.* at 337. Because the applicable provision of ERISA in effect at the time forbid a refund for contributions made due to a mistake of law, the employer in *Crews* could not receive a refund.

This portion of our decision in *Crews* is not applicable to the post-ERISA claims in the present case because ERISA was amended in 1980 to allow refunds for contributions made by a mistake of law as well as for those made by a mistake of fact, and the Central States' Trustees in the present case denied the request for a refund in 1981 when the amended law, allowing refunds for contributions made by a mistake of law, was in effect.

This court did state in a footnote in *Crews* that although ERISA had been amended in 1980 to allow a refund for mistakes of law with no time limitations, the amendment did not prevent the parties to an agreement from providing for more restrictive terms regarding refunds. *Id.* at 337, n. 2. In a footnote in *Whitworth I,* this court stated that a claim for restitution is limited by the terms of the agreement between the parties. 794 F.2d at 236, n. 24. However, this statement did not mean

that any limitation in regard to the refund of contributions made by mistake would be upheld. *Whitworth I* stated that plaintiff could bring an action for restitution under federal common law, and in a common law action for restitution, it must be determined if a limit on the return of money paid by mistake is fair and equitable in order to prevent unjust enrichment.

Most other courts of appeals that have considered the issue have held that unless a refund limitation policy is necessary to the financial soundness of the pension benefit plan based on actuarial data, such a policy is arbitrary and capricious as it results in unjust enrichment. In other words, even if the parties may contract for more restrictive terms, it does not necessarily follow that any refund restriction a pension plan wishes to make will be reasonable. The restriction cannot be arbitrary. The standard of review as articulated by this court in *Teamsters Local 348 Health and Welfare Fund v. Kohn Beverage Co.,* 749 F.2d 315, 321 (6th Cir.1984), *cert. denied,* 471 U.S. 1017, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985) is that "the trustees' action is conclusive unless arbitrary and capricious, not supported by substantial evidence, or erroneous as a matter of law."

The district court in the present case held that Central States' one-year refund limitation policy is reasonable, relying on *Fuller Cinder Co. v. Central States Pension Fund,* 2 Employee Benefits Cas. 2458, 2460 (E.D.Mich.1982). However, the district court failed to consult the various opinions of the courts of appeals that have considered this issue, did not take into account equitable considerations, and provided no reasoning for its decision.

The circuit courts are split in regard to the issue of whether a federal court may determine in an action for restitution under federal common law that a contractual limitation on refunds for contributions mistakenly made is unreasonable. The only circuit that upholds any contractual limitation in regard to refunds as binding under federal common law is the Ninth Circuit.[10] In

10. In *Van Orman v. American Ins. Co.,* 680 F.2d 301 (3rd Cir.1982), the Third Circuit stated that

*Admiral Packing Co. v. Robert F. Kennedy Farm Workers Medical Plan*, 874 F.2d 683 (9th Cir.1989), the Ninth Circuit upheld the medical plan's one-year refund limitation policy. *Id.* at 684. The court stated that nothing in 29 U.S.C. § 1103(c)(2)(A) of ERISA prevents a fund from adopting a more restrictive provision in a trust document. *Id.* at 685. The Ninth Circuit concluded that a federal court cannot set aside rules affecting pension benefits when they are fixed by the terms of a collective bargaining agreement and violate no command of Congress. Therefore, the one-year refund limitation policy was found to be valid. *Id.* at 686.

The majority of the courts of appeals disagree with the Ninth Circuit and examine the refund provision of a benefit fund's trust agreement to see if it is arbitrary and capricious as weighed by principles of equity. In *Jamail, Inc. v. Carpenters District Council of Houston Pension & Welfare Trusts*, 954 F.2d 299, 305 (5th Cir.1992), the Fifth Circuit held that a six-month refund limitation rule was not equitable. In *Jamail*, the Pension and Welfare Trusts notified Jamail, the employer, that the company had erroneously made $51,434.68 in contributions on behalf of its employees for hours worked on jobs not covered by the collective bargaining agreements. The Trust Funds refused to refund the full overpayment because of its policy of a six-month limit on refunds. *Id.* at 301.

The Fifth Circuit held that under equitable principles, the sixth-month limitation in the refund policy was unduly limiting, stating:

> The Trust Funds audits the employers every four years, and they have four years to bring an action against the employers for inadequate payments. Employers, however, are granted refunds for only a six month period. Justice demands a directly reciprocal limit; recovery of underpayments and refund of overpayments should be possible for an equal period.

it was reluctant to fashion a federal common law cause of action under a doctrine of unjust enrichment for overpayments or mistaken contributions when "such a right would override a

*Id.* at 305. The *Jamail* court believed that allowing such a refund based on a common law right of restitution and equitable considerations was compatible with ERISA's policies. The court stated:

> There are valid reasons why an employer might make an overpayment of contributions to a fund. A simple keypunch error could cost an employer thousands of dollars. An employer also, as in this case, could make an honest mistake in calculating the amount it owes. Moreover, not every pension fund will necessarily be administered in a reasonable manner. An unscrupulous trustee could extort money out of an employer by fraud and then refuse to refund the money. *Plucinski* [*v. I.A.M. Nat. Pension Fund* ], 875 F.2d [1052] at 1058 [3d Cir. 1989]. We mention the examples only as illustration of the potential for overpayment of contributions to pension plans.
>
> An important component of ERISA is it does not compel the establishment of employee pension funds. It is optional for an employer to establish an ERISA qualifying pension plan. We want to encourage small and fledgling employers, such as Jamail, to provide benefit plans for their employees. Putting the risk of unjustified loss in situations such as this on employers may discourage employers from even establishing such benefit plans. Moreover, if ERISA is going to achieve its objective, it should encourage employers to err toward overpayment rather than to slight the fund because of a fear that there can be no effective restitution. If employers perceive that no refunds are available, they are likely to delay payment to the fund until they can calculate accurately the precise amount they owe. This denies to the fund working capital which could be crucial to its survival. It is true that ERISA is properly construed to benefit employees, but a fundamental fairness to em-

contractual provision." *Id.* at 312. This opinion is in conflict with this court's opinion in *Whitworth I,* which states that there is such a federal common law cause of action.

ployers is implicit in establishing such funds.

*Id.* at 304. The court of appeals therefore ordered the Trust Funds to refund Jamail's $51,434.68 in overpayments. *Id.* at 306.

In *Dumac Forestry Services, Inc. v. International Broth. of Elec. Workers,* 814 F.2d 79, 83 (2nd Cir.1987), the Second Circuit held that a remand was required to determine whether a three-year limitation on refunds was arbitrary and capricious. The Fund (NEBF) argued that while section 1103(c)(2)(A)(ii) of ERISA does not *prohibit* refunds of overpayments, neither does it *require* them. Consequently, NEBF urged a construction of the statute under which refund decisions would be made under the refund policy adopted by the trustees pursuant to their discretionary authority under ERISA, subject to judicial review only under an arbitrary or capricious standard. NEBF contended that its three-year refund policy was not arbitrary or capricious. *Id.* at 82.

The Second Circuit refused to accept this argument. After noting the limited arbitrary and capricious standard under which it could review the administrative acts of pension fund trustees, it found that the district court had failed to adequately take into account equitable considerations in denying Dumac's summary judgment motion for a refund.

> Judge McCurn [the district court] properly noted the applicable "arbitrary or capricious" standard of review and was unwilling to find, as a matter of law, that the policy was arbitrary. We agree that on the limited record before him, he could not have done otherwise. It was improper, however, for the district court to grant summary judgment.... We think it apparent that a determination as to the trustees' refund policy could not be made on the record before the district court at the time the cross-motions for summary judgment were made. It is beyond dispute that protection of the financial integrity of multiemployer pension funds is the touchstone of

ERISA. *See* 29 U.S.C. § 1001 (1982). *Consequently, NEBF's refund limitation rule must be evaluated in light of actuarial and other data considered by the trustees when they adopted the rule—data that were not part of the record before the district court.* For example, although NEBF contends that its rule was adopted to secure the fund's fiscal stability by barring refunds of large overpayments made over long periods of time, we have been directed to no support in the record for that assertion....

*Id.* at 82–83 (emphasis added).[11] The court concluded that a remand was required to determine whether the refund rule was arbitrary and capricious based on equitable principles and that a principal equitable consideration is whether restitution would undermine the financial stability of the plan. *Id.* at 83.

Other courts have agreed with the Second Circuit that a principal equitable consideration in determining whether a refund limitation rule is valid is whether restitution would undermine the financial stability of the plan. In *Plucinski v. I.A.M. National Pension Fund,* 875 F.2d 1052, 1053 (3rd Cir.1989), the Third Circuit held that an employer may recover contributions made by mistake when the court finds it equitable, but that if restitution would result in underfunding of the pension plan, it would be inequitable to order it. The Third Circuit stated, "If we put the burden of mistaken payments wholly on employers, we may discourage some employers from operating ERISA qualifying plans. It thus furthers the purposes of ERISA to recognize [a] cause of action [for unjust enrichment]." *Id.* at 1058.

In *Peckham v. Board of Trustees of International Broth. of Painters and Allied Trades Union and Industry National Pension Fund,* 719 F.2d 1063 (10th Cir. 1983), the Tenth Circuit ordered restitution of contributions erroneously made by union members who were self-employed, based on the following reasoning:

---

**11.** Similarly, in the present case, Central States argues that the one-year limit is necessary for the Fund's fiscal stability, but provides no support in the record for this argument.

The record contains no evidence that the pension fund would be underfunded if the trustees returned plaintiffs' contributions. The contributions were made pursuant to a money purchase rather than a fixed benefit plan concept because employers apparently contributed a certain amount per hour of work by each participant. The trustees complain that a refund will diminish the plan's assets but neglect to mention the corresponding decrease in the fund's liabilities because the individuals for whom these contributions were made will not be entitled to pensions. Under the circumstances, the fund clearly would be unjustly enriched if it retained these monies.

*Id.* at 1066. Therefore, in *Peckham,* the court held that it was an abuse of the trustees' discretion to deny a refund.

In *Chase,* 753 F.2d at 753, the court of appeals held that restitution should be allowed if the refund would not affect the fund's financial stability. In *Chase,* the trustees had introduced evidence on the effect of a refund on the actuarial soundness of the plan, but the district court did not make any findings on the issue, so the case was remanded for further consideration in this regard.

The court in *Kwatcher v. Mass. Service Employees Pension Fund,* 879 F.2d 957, 966 (1st Cir.1989) considered whether 29 U.S.C. § 1103(c)(2)(A)(ii), which permits a refund to employers resulting from overpayments, is merely permissive and allows a fund complete discretion in making refunds. The court found that the regime urged by the pension fund, which was to give it complete discretion, would violate federal common law. *Id.* The court reasoned:

It is not uncommon for employers erroneously to disburse large sums to employee benefit plans, believing the extra payments mandated by ERISA and/or the plan documents. Under the regime urged by appellee, pension funds would be permitted to retain all such sums. Since there would be no incentive to return mistaken payments voluntarily, the permissive refund mechanism, 29 U.S.C. § 1103(c)(2)(A), would be like a permanently-shut window: decorative, but of no assistance in letting in a breath of fresh air.

We will not lightly assume that Congress intended to enact a self-nullificatory refund provision. We are equally loath to think that Congress meant either to craft a heads-I-win, tails-you-lose matrix, or to institutionalize a one-sided windfall permitting employee-participants to sponge off an employer's good-faith bevues. In the long run, penalizing employers for undercontributing, while refusing to refund their excess contributions, could frustrate ERISA's goal of expanding pension plan coverage. Manifest inequity is one effective way of discouraging employers from sponsoring ERISA-qualified plans at all.

*Id.* at 965–66 (citations omitted). The court stated that Congress expected "that a federal common law of rights and obligations under ERISA-regulated plans would develop" and that "federal courts may award restitution to employers in ERISA cases where principles of equity make such an award appropriate" when one party would be unjustly enriched at the expense of another. *Id.* at 966.

■ We agree with the reasoning of the Fifth, Second, Third, Tenth, and First Circuits that a restriction on refunds must not be arbitrary and capricious as measured by equitable principles. A pension fund's refusal to refund contributions paid by mistake is arbitrary unless necessary to the financial soundness of the plan or justified by some other compelling reason. In the present case, the grant of summary judgment on this issue was not proper because the district court merely proclaimed that the one-year refund limitation provision was reasonable without providing any analysis or taking into account principles of equity. Because the record is insufficient to determine whether a one-year refund limitation policy is necessary to ensure Central States' financial stability as the Fund alleges, a remand is necessary.

Contrary to defendants' contention, this court has not interpreted *Whitworth I* to

mean that an equitable action for restitution will necessarily be denied on the basis of a clear limitation in the contract. In *Kentucky Laborers District Council Health & Welfare Fund v. Hope*, 861 F.2d 1003, 1005 (6th Cir.1988), this court rejected the argument that if the terms of the collective bargaining agreement are unambiguous and clear, they dictate the result in an equitable action for restitution.

Moreover, in *Wells v. U.S. Steel & Carnegie Pension Funds, Inc.*, 950 F.2d 1244, 1250 (6th Cir.1991), this court held that the provisions of a pension fund's trust agreement are governed by trust law, not contract law. In *Wells*, a pension fund filed a counterclaim for the recoupment of alleged overpayments of $6,000 to $50,000 per person it had made to thirty-one former employees of United States Steel Corporation, who, upon retirement, had begun drawing pension benefits from the fund. *Id.* at 1247. The trust agreement permitted recoupment of the overpayments from the retirees, but this court stated that "ERISA is governed by trust, not contract, law." *Id.* at 1250. The court was concerned with the possible inequitable impact that recoupment of the benefits already paid by the fund to the retirees could have on the retirees, who had submitted affidavits describing the hardship they would suffer if they were forced to pay back the benefits which they had already received and depended upon. Because of these concerns, the court remanded the case to the district court to consider whether, under principles of equity, recoupment should be permitted. *Id.* at 1251. This court in *Wells*, thus, has rejected the argument set forth by the Ninth Circuit in *Admiral Packing* that the provisions of a trust agreement prevail. Instead, in *Wells*, this court reversed the district court and refused to enforce the recoupment term of the trust agreement without considering the equities involved. Similarly, we believe that in the present case, the district court erred in upholding the one-year refund limitation rule found in the trust agreement without considering the equities involved.

This position is also supported by recent opinions of the Supreme Court. In *Cen-*

*tral States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985), the Supreme Court stated, "In general, trustees' responsibilities and powers under ERISA reflect Congress' policy of 'assuring the equitable character' of the plans. Thus, rather than explicitly enumerating *all* the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility." *Id.* at 570, 105 S.Ct. at 2840. *See also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) ("ERISA abounds with the language and terminology of trust law"). In *Central Transport*, the Supreme Court observed that Central States' trust agreement (which was the same trust agreement at issue in the present case) gave the Trustees authority to do all the acts necessary and proper for the protection of the property held under the trust agreement. 472 U.S. at 570, 105 S.Ct. at 2840. We believe that unless a refund limitation policy is based on actuarial data and necessary to the pension fund's financial stability, it is not necessary for the protection of the property held under the trust agreement for the benefit of the employees, and is arbitrary and capricious. The fund is receiving a windfall and is unjustly enriched by refusing to return an employer's mistaken contributions when it no longer is obliged to pay pension benefits for the employee on whose behalf the contributions were made. For these reasons, we find that a pension fund's refusal to refund contributions paid by mistake is arbitrary unless retention of the money is necessary to the financial soundness of the plan or justified by some other compelling reason.

■ Furthermore, we agree with the reasoning of the First, Second, Third, Fifth, and Tenth Circuits that a determination of whether a refund limitation policy comports with principles of equity in an action for restitution under federal common law furthers the purposes of the Multiemployer Pension Plan Amendments Act of 1980

("MPPAA")—to encourage greater employer participation in ERISA-covered plans. As the court in *Jamail* pointed out, achieving equity can work in aid of pension funds as well as for the employers who contribute to them. 954 F.2d at 305. For example, *Provident Life & Accident Ins. Co. v. Waller* is a case in which equitable principles were applied to the benefit of the pension fund. 906 F.2d 985, 990 (4th Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). In *Waller,* a self-funded employee benefit plan advanced money to an employee after an auto accident. The employee later recovered damages from a third party, but refused to reimburse the benefit plan for the advance. The Fourth Circuit recognized a federal common law right of unjust enrichment to allow the pension fund to recover its money. Thus, our recognition of a common law cause of action in restitution to prevent unjust enrichment can also be a boon for pension funds.

To conclude, the standard of review to be applied is whether Central States' refund limitation rule is arbitrary and capricious as measured by equitable principles. In the present case, the district court concluded, on a motion for summary judgment, that the one-year refund limitation policy was not arbitrary and capricious, but provided no analysis for this determination other than that the limit was a provision of the contract. Further analysis is needed to determine whether such a limitation is necessary to the Fund's financial stability and comports with the equitable principles discussed herein. The case must be remanded for a factfinding hearing in this regard. We vacate the district court's grant of summary judgment in regard to the issue of whether Central States' one-year refund limitation policy is arbitrary and capricious, and remand the case to the district court for a determination of this issue as weighed by principles of equity.

## V.

In regard to Ernest Whitworth, the district court upheld Central States' denial of a refund for post-ERISA contributions made on his behalf after January 1, 1975 because it found that no refund request was timely made within the one-year limitation provision of the trust agreement.

■ We agree with the district court's determination that plaintiff never requested that Central States refund the post-ERISA contributions mistakenly made on behalf of Ernest Whitworth before filing a complaint in federal court. However, we believe that the complaint insofar as it concerned the post-ERISA contributions made on behalf of Ernest Whitworth from January 1, 1975 to July 1981 should have been dismissed for a different reason than that provided by the district court.

Plaintiff argues that it was bad faith for Central States to continue billing for contributions due on behalf of Ernest Whitworth after the Fund had refused benefits and a full refund to William Whitworth in July 1981. Plaintiff argues that because of its bad faith, the Fund is now estopped from denying a refund to Ernest Whitworth.

We disagree with the bad faith argument. Central States operates under a self-reporting system (See Footnote # 5), and as long as Central States' records indicate that the employer is reporting employee work history to the pension fund, the employer will be billed accordingly. It is up to the employer to notify Central States of a change in the status of an employee. We find nothing arbitrary and capricious about such a policy. In the present case, plaintiff did not give the Fund notice that it believed Ernest Whitworth was not covered by the collective bargaining agreement and that it was not required to make contributions on his behalf. The passing reference to Ernest Whitworth in William Whitworth's letter of February 3, 1979 does not suffice. The attorney retained by the Company never mentioned Ernest Whitworth in its correspondence. We agree with the Fund that it is administratively impossible for Central States to review each and every contribution it receives from an employer for verification of eligibility. Since Central States works on a self-reporting system, the Fund did not have any basis for discontinuing billings to Whitworth Bros. Storage

for contributions on behalf of Ernest Whitworth just because benefits and a refund were denied William Whitworth.[12]

Plaintiff never made a refund request to Central States for the return of contributions made on Ernest Whitworth's behalf and thus failed to exhaust its administrative remedies. An employer, such as plaintiff, may not cease making contributions on behalf of an employee and then immediately file a claim in federal court for a refund of prior contributions made on the employee's behalf in an action for restitution under federal common law without first requesting a refund from the pension fund. It is well-settled law in this circuit that the court will dismiss a claim for failure to exhaust administrative remedies. *Brotherhood of Locomotive Engineers v. ICC*, 909 F.2d 909, 912–13 (6th Cir.1990); *Director, Office of Workers' Compensation Programs v. Quarto Mining Co.*, 901 F.2d 532, 536 (6th Cir.1990); *Hix v. Director, Office of Workers' Compensation Programs*, 824 F.2d 526, 527 (6th Cir.1987).

The district court's denial of a refund for contributions made on behalf of Ernest Whitworth after January 1, 1975 thus is affirmed, but for a reason other than that stated by the district court. *See Foster v. Kassulke*, 898 F.2d 1144, 1146 (6th Cir. 1990) (if district court reaches right conclusion for wrong reason, the court can affirm for reasons other than those stated by the district court). The claim for post-ERISA contributions erroneously made on behalf of Ernest Whitworth from January 1, 1975 through July 1981 should be dismissed for failure to exhaust administrative remedies.

## VI.

■ Finally, we must decide whether interest should be awarded on whatever amounts are refunded.

Plaintiff's argument that interest should be awarded is contrary to prevailing law. In *Airco Industrial Gases, Inc. v. Teamsters Health and Welfare Pension Fund*, 850 F.2d 1028, 1037 (3rd Cir.1988), the court denied Airco's request for interest on the refund amount, holding that the poli-

cies underlying ERISA prevented the court from exercising its equitable powers to award interest. The court was specifically concerned with the policy embodied in 29 U.S.C. § 1103(c)(1), which provides that assets "shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." *Id.* at 1037. The court stated:

> [i]nterest, which is the accrued value of money over time, is not a part of the overpayment but an incident of it. The amount of interest a court might award comes directly from the plan's assets and will deprive participants and beneficiaries of its use.... The decision to order restitution is an effort at correcting an injustice, but payment of interest means an amount greater than that paid in as excess contributions may be awarded while the fund has encountered certain [administrative] costs related to the overpayments. An award of interest, therefore, could cost the fund more than if the excess contribution had never been made.

*Id.* The court concluded that the anti-inurement policy of ERISA barred an award of interest on any refund. *Id.* *Accord Dumac Forestry Services, Inc.*, 814 F.2d at 83 (denying interest on restitutionary award); *See also Peckham v. Board of Trustees of International Broth. and Allied Trades Union*, 724 F.2d 100, 101 (10th Cir.1983) (deferring to proposed treasury regulation barring payment of interest).

We agree that the anti-inurement policy of ERISA bars an award of interest on any amount that is refunded.

## VII.

To conclude, the opinion of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion. The district court's denial of a refund for all pre-ERISA contributions made prior to January 1, 1975 and dismissal of the complaint in regard to

---

12. During the period of June 1964 through July 1981 when Whitworth Bros. Storage reported employee work history to the Fund, employers contributed to Central States on behalf of up to 391,000 participants.

post-ERISA contributions made on behalf of Ernest Whitworth after January 1, 1975 is AFFIRMED. The grant of summary judgment in regard to the denial of a refund for post-ERISA contributions made on behalf of William Whitworth after January 1, 1975 is REVERSED and the case is REMANDED for further proceedings in this regard. On remand, the district court must determine whether Central States' one-year refund limitation policy is arbitrary and capricious as measured by principles of equity. Finally, the district court's decision that no interest is due on whatever amounts are refunded is AFFIRMED.