**JAMAIL, INC., Plaintiff–Appellee, Cross–Appellant,**

v.

**The CARPENTERS DISTRICT COUNCIL OF HOUSTON PENSION & WELFARE TRUSTS, Defendant–Appellant, Cross–Appellee.**

No. 91–2084.

United States Court of Appeals, Fifth Circuit.

Feb. 27, 1992.

Rehearing Denied March 25, 1992.

---

Richard J. Davis, Jr., Pappy & Davis, Los Angeles, Cal., Douglas M. Selwyn, Pope, Shoemake, Selwyn, Aguren & Kerr, Houston, Tex., for defendant-appellant cross-appellee.

L.G. Clinton, Jr., Phyllis A. Finger, Houston, Tex., for plaintiff-appellee cross-appellant.

Before WILLIAMS, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Jamail, Inc. brought suit for restitution of $51,434.68 in erroneously-paid contributions to multiemployer trust funds managed by the Houston District Council of Carpenters Pension Plan and The Houston District Council of Carpenters Health and Welfare Trust ("Trust Funds"). After two hearings and the filing of Agreed Stipulations of Facts, the district court recognized a federal common law right of restitution pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, as amended 29 U.S.C. § 1001, et seq. (1988). The court granted summary judgment in favor of Jamail and ordered the Trust Funds to return 80% of the overpayment. The remaining 20% of the overpayment was granted to the Trust Funds to cover administrative fees. 752 F.Supp. 741.

The Trust Funds appeal the granting of the summary judgment in favor of Jamail, and Jamail appeals the 20% offset in favor of the Trust Funds. We affirm the judgment of restitution in favor of Jamail. We reverse, however, the 20% offset and render an offset of $600.00.

## I. FACTS

The Agreed Stipulation of Facts enunciates the central facts pertinent to the case. The Trust Funds are employee benefit plans within the meaning of Section 3 of ERISA. Jamail is a general contractor in Texas who entered into four collective bargaining agreements with the Trust Funds between 1984 and 1986. Jamail agreed to make contributions to the Trust Funds on behalf of its employees.

On October 8, 1986, the Trust Funds requested that Jamail submit its payroll records of four jobs covering the period of January 1984 through December 1986 for an audit. The Trust Funds strive to audit every contributing employer once every four years. The parties exchanged correspondence in an attempt to clarify the procedures to be followed in the audit, and Jamail eventually agreed to the audit on November 7, 1986. Jamail, however, did not make its records available to the auditors until February 27, 1987.

Prior to the audit of Jamail, the Trustees of the Trust Funds adopted a policy regarding the refund of contributions mistakenly made by employers. The policy is stated in the minutes of the regularly scheduled meeting of the Trustees held on February 11, 1987. The Trustees determined that refunds are to be limited to only those contributions mistakenly paid in the six month period prior to the date the Trustees are notified of the claim. The Trustees adopted the policy retroactively, and Jamail was given no notice of the policy.

The auditors discovered Jamail made excess contributions in the amount of $51,434.68. Jamail's employees worked at numerous job sites, and they were rotated among the job sites. The audit revealed that Jamail had erroneously contributed to the Trust Funds for hours worked on jobs not covered by the collective bargaining agreements. The Trustees informed Jamail of its overpayment by letter dated June 8, 1987, and Jamail requested a refund of the full amount on November 10, 1987. Pursuant to the refund policy, however, the Trust Funds offered to refund only $1,146.00. This amount represented Jamail's overpayments for the last six months of 1986 less $600.00 as an administrative audit fee.

Jamail brought suit for a refund under two alternate theories: (1) a statutory right to recovery of mistakenly paid contributions under ERISA; or (2) a federal common law claim for restitution. The district court granted Jamail's summary judgment for recovery under the federal common law of restitution but offset the judgment by an administrative fee of 20%. It is this judgment from which the parties now appeal.

## II. DISCUSSION

If Jamail was to bring suit for recovery of its mistakenly paid contributions, it initially had three options: (1) a state law claim; (2) a private right of action under ERISA; or (3) a federal common law cause of action. The state law claim and private right of action under ERISA were unavailing; Jamail's only recourse was a federal common law cause of action.

The enactment of ERISA preempted state law in employee benefit plan regulation. In Section 1144(a), the statute itself expressly provides for preempting state law.[1] Moreover, the caselaw, without exception, has confirmed ERISA's preemption of state law. *See, e.g., FMC Corp. v. Holliday,* — U.S. ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); *Pitts by and through Pitts v. American Security Life Ins. Co.,* 931 F.2d 351, 355 (5th Cir.1991); *Morales v. Pan American Life Ins. Co.,* 914 F.2d 83,

---

1. "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter *shall supersede* any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..." 29 U.S.C. § 1144(a) (emphasis added).

86 (5th Cir.1990); *Hayden v. Texas–U.S. Chemical Co.,* 681 F.2d 1053, 1057 (5th Cir.1982). Thus, there can be no recompense under state law.

■ Similarly, Jamail was unable to maintain a private cause of action under ERISA. In a previous opinion, this Court stated in *dicta:* "While we tend to agree that ERISA does not provide a private right of action to an employer seeking to recover mistakenly overpaid contributions, we do not feel the need to address an issue which has already split the Circuits." *South Central United Food & Commercial Workers Union v. C & G Markets, Inc.,* 836 F.2d 221, 224 (5th Cir.), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2823, 100 L.Ed.2d 924 (1988). Now that we are faced with a case openly confronting the issue, we address it more directly.

Civil enforcement of ERISA is governed by 29 U.S.C. § 1132, which provides that a civil action may be brought only by a participant,[2] a beneficiary,[3] a fiduciary,[4] or the Secretary.[5] Employers are conspicuously absent from the list of those entitled to bring a civil action. "Where Congress has defined the parties who may bring a civil action founded on ERISA, we are loathe to ignore the legislature's specificity. Moreover, our previous decisions have hewed to a literal construction of § 1132(a)." *Hermann Hospital v. Meba Medical & Benefits Plan,* 845 F.2d 1286, 1288–89 (5th Cir. 1988). We conclude that Jamail, therefore, had no right of action under Section 1132.

Jamail asserts that even if it did not have a right of action under Section 1132, it did have a right of action under Section 1103. This section provides:

> In the case of a contribution ... if such contribution or payment is made by an employer to a multiemployer plan by a mistake of fact or law ... paragraph (1) *shall not prohibit* the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.

29 U.S.C. § 1103(c)(2)(A)(ii) (emphasis added). Jamail, thus, argues that Section 1103 provides an employer with a right of action for mistakenly paid contributions. This argument is unavailing.

The legislative history of Section 1103 does not indicate that Congress intended to create a right to such contributions. *Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund,* 794 F.2d 221, 230–31 (6th Cir.), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986). The language of Section 1103 is permissive, simply allowing, but not mandating, pension funds to return contributions. In fact, Section 403(c)(2)(A)(ii) was enacted to allow trustees of a fund to refund mistaken contributions without facing a suit by beneficiaries for violating the non-inurement provision of Section 403(c)(1). *Plucinski v. I.A.M. National Pension Fund,* 875 F.2d 1052, 1055 (3rd Cir.1989). In light of both the permissiveness of Section 1103 and the specificity of Section 1132, it would be improper to imply a right of action under Section 1103.

---

**2.** "The term 'participant' means any employee or former employee of any employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).

**3.** "The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

**4.** "Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in administration of such plan...." 29 U.S.C. § 1002(21)(A).

**5.** "The term 'Secretary' means the Secretary of Labor." 29 U.S.C. § 1002(13).

Thus, we hold, as a number of our colleagues in other Circuits have,[6] that employers do not have a private right of action under ERISA. Jamail's only remaining possible opportunity for recompense is through a federal common law action of restitution.

■ The application of federal common law to a statute is not an example of the judiciary rewriting legislation. "To the contrary, the inevitable incompleteness presented by all legislation means that interstitial federal lawmaking is a basic responsibility of the federal courts." *United States v. Little Lake Misere Land Co., Inc.*, 412 U.S. 580, 594, 93 S.Ct. 2389, 2397, 37 L.Ed.2d 187 (1973). Whenever Congress enacts complex and comprehensive legislation, such as ERISA, minor gaps in the legislation are unavoidable. Congress cannot be expected to perceive in advance all the ramifications of its legislation. It is the judiciary's role, therefore, to fill in these gaps.

Examples of the application of federal common law to sweeping legislation can be found throughout the case law: *Trans World Airlines, Inc. v. Independent Federation of Flight Attendants*, 489 U.S. 426, 109 S.Ct. 1225, 1230, 103 L.Ed.2d 456 (1989) (applying federal common law with respect to reinstatement rights of strikers under the Railway Labor Act); *International Brotherhood of Electrical Workers, AFL–CIO v. Hechler*, 481 U.S. 851, 855, 107 S.Ct. 2161, 2165, 95 L.Ed.2d 791 (1987) (citing an earlier opinion for the proposition that Congress intended the federal courts to develop a body of common law for the enforcement of collective bargaining agreements pursuant to the Labor Management Relations Act); *Pennzoil Co. v. F.E.R.C.*, 645 F.2d 360, 387 (5th Cir.1981), *cert. denied*, 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982) (holding that federal common law applies in determining which state's contract law applies pursuant to both the Natural Gas Act of 1938 and The Natural Gas Policy Act of 1978); and *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.*, 391 F.2d 486, 491 (2d Cir.1968) ("Where neither the Communications Act [of 1934] itself nor the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law").

Both the legislative history and the case law pursuant to ERISA validate our application of federal common law to ERISA. The legislative history explains that due to the broad preemption provisions, "a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." 120 Cong.Rec. 29942 (1974) (remarks of Sen. Javits). The case law pertaining to ERISA also supports the application of common law to the statute. We have recently said: "Congress intended that federal courts should create federal common law when adjudicating disputes regarding ERISA." *Rodrigue v. Western and Southern Life Ins. Co.*, 948 F.2d 969, 971 (5th Cir.1991). The *Rodrigue* decision merely reiterates the holding of many other cases.[7]

It is important, however, for the judiciary to recognize that our power to devel-

---

6. *See e.g., Kwatcher v. Massachusetts Service Employees Pension Fund*, 879 F.2d 957 (1st Cir. 1989); *Plucinski v. I.A.M. National Pension Fund*, 875 F.2d 1052 (3rd Cir.1989); and *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). *But see, Award Service, Inc. v. Northern California Retail Clerks Unions and Food Employers Joint Pension Trust Fund*, 763 F.2d 1066, 1068 (9th Cir.1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 850, 88 L.Ed.2d 890 (1986).

7. The following are just a few of the many cases supporting the application of federal common law to ERISA: *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 24 n. 26, 103 S.Ct. 2841, 2854 n. 26, 77 L.Ed.2d 420 (1983); *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir.1989); *Kwatcher v. Massachusetts Service Employees Pension Fund*, 879 F.2d 957, 966 (1st Cir.1989); *Plucinski v. I.A.M. National Pension Fund*, 875 F.2d 1052, 1056 (3rd Cir. 1989); *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 990 (4th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990); and *Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 794 F.2d 221, 236 (6th Cir.), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986).

op common law pursuant to ERISA does not give carte blanche power to rewrite the legislation to satisfy our proclivities. The legislative branch is granted the authority to make the policy decisions underlying ERISA, and in devising common law we must be careful to remain faithful to ERISA's policies. In the past, this Court has carefully recognized the need to implement the policies of ERISA without altering that policy. We have decided a number of cases creating common law pursuant to ERISA [8] and refusing to apply common law to ERISA.[9]

The crux of the case, therefore, is whether granting Jamail a common law right of restitution for overpayment is compatible with ERISA's policies. We are not the first court to confront the issue, but the courts which have addressed it have reached different results.[10] We are, however, convinced that a federal common law right of restitution under ERISA is in accordance with its policy of total federal control of employee pension plans in all their facets.

There are valid reasons why an employer might make an overpayment of contributions to a fund. A simple keypunch error could cost an employer thousands of dollars. An employer also, as in this case, could make an honest mistake in calculating the amount it owes. Moreover, not every pension fund will necessarily be administered in a reasonable manner. An unscrupulous trustee could extort money out of an employer by fraud and then refuse to refund the money. *Plucinski* 875 F.2d at 1058. We mention the examples only as illustration of the potential for overpayment of contributions to pension plans.

An important component of ERISA is it does not compel the establishment of employee pension funds. It is optional for an employer to establish an ERISA qualifying pension plan. We want to encourage small and fledgling employers, such as Jamail, to provide benefit plans for their employees. Putting the risk of unjustified loss in situations such as this on employers may discourage employers from even establishing such benefit plans. Moreover, if ERISA is going to achieve its objective, it should encourage employers to err toward overpayment rather than to slight the fund because of a fear that there can be no effective restitution. If employers perceive that no refunds are available, they are likely to delay payment to the fund until they can calculate accurately the precise amount they owe. This denies to the fund working capital which could be crucial to its survival. It is true that ERISA is properly construed to benefit employees, but a fundamental fairness to employers is implicit in establishing such funds.

Our holding that there is a right of restitution comports with our previous ruling in *South Central United Food & Commercial Workers Unions v. C & G Markets,*

---

**8.** *E.g., Penn v. Howe–Baker Engineers, Inc.,* 898 F.2d 1096, 1101–02 (5th Cir.1990) (applying the federal common law of agency in determining whether an individual is an employer or an independent contractor for purposes of ERISA); and *Pitts by and through Pitts v. American Security Life Ins. Co.,* 931 F.2d 351, 356 (5th Cir. 1991) (exercising the common law doctrine of waiver to assert a defense pursuant to ERISA).

**9.** *E.g., Morales v. Pan American Life Ins. Co.,* 914 F.2d 83, 87 (5th Cir.1990) (refusing to create a federal common law of unjust enrichment and third-party beneficiary claims upon termination of a plan because it would be inconsistent with ERISA's terms and policies); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1297 (5th Cir.1989) (declining to fashion a federal common law rule permitting an oral agreement as the basis of a cause of action under ERISA because ERISA specifically and clearly addresses the issue).

**10.** *Compare* the following cases finding such a right: *Kwatcher v. Massachusetts Service Employees Pension Fund,* 879 F.2d 957 (1st Cir. 1989); *Plucinski v. I.A.M. National Pension Fund,* 875 F.2d 1052 (3rd Cir.1989); *Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund,* 794 F.2d 221 (6th Cir.), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986); *Central States, Southeast and Southwest Areas Pension Fund v. Howard Baer, Inc.,* 753 F.Supp. 241 (N.D.Ill. 1991); and *Soft Drink Industry Local Union No. 744 Pension Fund v. Coca–Cola Bottling Co. of Chicago,* 679 F.Supp. 743 (N.D.Ill.1988); *with* the following case denying such a right: *Dime Coal Co., Inc. v. Combs,* 796 F.2d 394 (11th Cir.1986).

*Inc.*, 836 F.2d 221 (5th Cir.), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2823, 100 L.Ed.2d 924 (1988). In *C & G Markets,* we held that when a fund sues for underpayment, any recovery granted to the fund is offset by any contributions mistakenly made. *Id.* at 225. Unless we now hold that an employer has a claim for restitution, an employer who makes an overpayment must cease making payments and counterclaim when it is sued if it wants to recover its overpayments. This result would be grotesque. It can be avoided by recognizing an employer's right to sue for restitution.

Many of the arguments offered by Trust Funds in opposition to a common law right of restitution pursuant to ERISA are undermined because restitution is a cause of action with its origins in equity. Trust Funds argue that the employers should be responsible for making the proper payments, and it is not the job of the trustees of a benefits fund to police the finances of an employer. Trust Funds correctly maintain that an employer is in a unique position to audit its own books. Furthermore, the overpayments may have already been paid out as a claim to an erroneously covered employee. Deference can and should be accorded these factors in determining how much should be refunded to the employer. Although these arguments may have validity in some situations, they can be resolved through ordinary equitable principles of restitution.

It needs to be remembered that achieving equity works in aid of pension funds as well as the employers who contribute to them. *Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985, 990 (4th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990), is a case in which equitable principles were applied to the pension plan's benefit. In that case, a self-funded employee benefit plan advanced money to an employee after an auto accident. The employee later recovered damages from a third party, but the employee refused to reimburse the benefit plan for the advance. The Fourth Circuit recognized a federal common law right of unjust enrichment to allow the benefit plan to recover its money. Although our recogni-

tion of a cause of action in restitution troubles pension funds in the present case, the same cause of action can be a boon for pension plans.

■ Trust Funds lastly argue that the cases in which a right of restitution has been granted in favor of employers should be distinguished from the present case because only the present case involves a fund which has a refund policy. In many cases, the existence of a refund policy could be one of the many factors considered in analyzing the equities of the case. In the present case, however, we hold that the refund policy is inapplicable to Jamail.

Where, as here, the Trustees exercise discretionary powers in their decisions, this Court applies an arbitrary and capricious standard in reviewing decisions made by the Trustees. *Penn v. Howe–Baker Engineers, Inc.*, 898 F.2d at 1099. Even applying such deference to the Trustees' decision, we must reject the applicability of its restrictive refund policy to Jamail.

We respect the importance of a refund policy: the Trust Funds need to settle their accounts and the employers need to close their books. Moreover, the employees may have consumed and enjoyed the benefits provided by the overpayments. Nevertheless, the six month limitation in the refund policy is unduly limiting. The Trust Funds audits the employers every four years, and they have four years to bring an action against the employers for inadequate payments. Employers, however, are granted refunds for only a six month period. Justice demands a directly reciprocal limit; recovery of underpayments and refund of overpayments should be possible for an equal period.

The most egregious element of the refund policy, however, is its retroactive application. The Trust Funds had existed for years without a six month limit on refunds, and then the Trustees decided to adopt such a policy and apply it retroactively. Moreover, Jamail was not given notice of the new policy. The Trustees asked the Houston Chapter, Associated General Contractors ("AGC") to inform its members of

the new refund policy, but Jamail is not a member of the AGC.

We hold that the six month limitation on the refund policy as applied in this case is invalid. There may be situations in which the six month limitation could be a valid part of a refund policy. But not in this case, especially with its retroactive application.

■ The final issue before this Court is the felicitousness of the district court's twenty percent offset for administrative expenses. Principles of equity must apply to insure that a trust fund is reimbursed for losses to the plan. We cannot, however, consider evidence of these losses for the first time on appeal. The district court made no findings of fact as to any losses incurred by the Trust Funds as a result of Jamail's mistaken payments. The only evidence before us concerning administrative fees is the $600 administrative fee the Trust Funds withheld in their tendered refund. Thus, we reverse the district court's offset, and order the Trust Funds to refund Jamail's $51,434.68 in overpayments less $600 as an administrative fee.

### III. CONCLUSION

Although Jamail is unable to bring a state law claim or a private cause of action under ERISA, he does have a federal common law right of restitution. Thus, we affirm the district court's summary judgment as it pertains to the right of restitution in the amount of $51,434.68, but we reverse the arbitrary twenty percent offset for overhead. Relying on the record before us we order an offset of $600.

AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.