**NATIONAL CARTAGE CO., Plaintiff,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE AND PENSION FUNDS, Defendant.**

No. Civ.A 97–40504.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 29, 1998.

Peter T. Mooney, Winegarden, Shedd, Flint, MI, Sander H. Simen, Simen, Winkler, Flint, MI, Kendall B. Williams, Williams Firm, Grand Blanc, MI, for National Cartage Company, plaintiff.

Paul M. Newcomer, Harrison Assoc., Bloomfield Hills, MI, Albert M. Madden, Central States Southeast and Southwest Areas Funds, Des Plaines, IL, for Central States Southeast and Southwest Areas Health and Welfare and Pension Funds, defendant.

## MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Before the court is a motion by defendant, Central States, Southeast and Southwest Areas Health and Welfare and Pension Funds, for summary judgment pursuant to Fed. R.Civ.P. 56. For the reasons set forth below, this court will deny defendant's motion in part, and grant it in part.

### Factual Background

Defendant is a multi-employer benefits fund that provides retirement benefits to employees pursuant to collective bargaining agreements between employers and local unions affiliated with the International Brotherhood of Teamsters. Pursuant to a series of collective bargaining agreements, plaintiff, National Cartage Company, paid contributions to the fund on behalf of its employees. Plaintiff also agreed to be bound by a trust agreement that governs the allocation of benefits. The instant dispute concerns contributions paid between 1961 and 1994 on behalf of John Nash, the 100% stockholder of plaintiff. The plan provides that only "employees" are eligible to participate. Defendant made a determination that Nash had supervisory responsibilities while he was employed

by plaintiff. Accordingly, defendant determined that Nash was not entitled to participate in the fund. However, plaintiff had paid contributions on Nash's behalf for the full 33–year period that Nash owned the company.

Nash originally applied for pension benefits in November of 1993. On July 24, 1996, defendant informed Nash that he was ineligible to participate in the plan. After defendant informed Nash in July of 1996 that he was not entitled to participate in the plan, Nash appealed that determination through various channels made available by defendant. None of these appeals were successful. During that same period, on August 6, 1996, plaintiff requested a refund of all contributions paid to the fund on behalf of Nash. Defendant indicated that it would not process such a request unless it received a signed statement from Nash waiving all claims to benefits under the plan. On July 21, 1997, Nash signed a statement in which he admitted that, as an owner, he was not a member of the bargaining unit and not able to participate in the plan. The statement further provided:

> When [my] records are corrected, as I have stated they should be, I understand and agree that I will not be entitled to any benefits from the Fund on account of the work I did for National Cartage Company during the time from October 1, 1961, to June 25, 1994, and I now state that I will not make any claim for any benefits on account of that work.

(Def.'s Mot. for Summ. J., Ex. 12.)

Plaintiff has been unable to recover the funds it contributed to the fund on Nash's behalf. Accordingly, on December 18, 1997 plaintiff filed the instant complaint seeking restitution of the funds.

## Discussion

### 1. Standard for summary judgment pursuant to Rule 56

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* 822 F.2d at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* 822 F.2d at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration*, 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party

must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir. 1991).

### 2. Analysis

The contributions at issue in this case can be broken down into three distinct groups:

(A) Contributions paid within the ten-year limitation period provided in the trust agreement (June 16, 1984 to June 16, 1994);

(B) contributions paid between the effective date of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and the start of the ten-year limitation period (January 1, 1975 to June 16, 1984); and

(C) contributions paid prior to the effective date of ERISA (October 1, 1961 to January 1, 1975).

This court finds that defendant is not entitled to summary judgment with respect to groups (A) and (B), but it is entitled to summary judgment with respect to group (C). The analysis related to each of these groups will be discussed in turn.

### A. Contributions paid within the ten-year limitation period provided by the trust agreement (June 16, 1984 to June 16, 1994)

As noted above, pursuant to a series of collective bargaining agreements between plaintiff and the International Brotherhood of Teamsters, plaintiff has participated in the defendant fund and agreed to be bound by the fund trust agreement. Article XIV, Section 1 of that trust agreement provides, in relevant part:

> The Trustees will issue a *credit* for contributions that have been billed to an Employer if (1) the related work history was reported by mistake of fact or law ... as determined by the Trustees and (2) the request for credit is received within ten years after the related work history was billed. If an employer no longer has an obligation to contribute to the Fund and has satisfied his withdrawal liability assessment, the Trustees will *refund* contributions paid by an Employer to the Trust if (1) such contributions were made by a mistake of fact or law ... as determined by the Trustees and (2) application therefor is received within ten years after payment of the contributions. An Employer shall not have a right to a refund of contributions made more than ten years prior to his application therefor.

(Def.'s Mot. for Summ. J., Ex. 1 (emphasis added).) This court notes that the Trustees have already authorized a *credit* in the amount of $28,930, which represents the amount of contributions paid by plaintiff on behalf of Nash in the ten years prior to June 16, 1994, which is the date on which notice was given to defendant that mistaken contributions had been paid. However, plaintiff asserts that it is entitled to a cash refund in that amount because it satisfies the requirements for a refund under the trust agreement.

In its reply brief related to the instant motion, defendant indicates that it:

> concedes that under the Trust Agreement, National is entitled to a cash refund of any *mistaken* contributions paid within ten years of its refund request since it has

withdrawn from [the fund] and has no withdrawal liability.

(Def.'s Reply Br. at 3 (emphasis in original).) However, defendant maintains that a cash refund is still not appropriate in this case because Nash allegedly informed defendant in early 1998 that he was still considering a further appeal of defendant's denial of his application for pension benefits. Accordingly, defendant contends that authorizing a cash refund at this point would potentially subject defendant to multiple inconsistent obligations. Specifically, defendant asserts that it may be required to refund plaintiff's contributions on behalf of Nash in addition to paying Nash's pension benefits.

In a supplemental pleading related to the instant motion, plaintiff attached an affidavit from Nash in which he, again, explicitly waives any and all claims related to any pension benefits from the defendant fund to which he may be entitled. (See Pl.'s Supp. Br. to Clarify Issues, Ex. A.) This waiver, combined with Nash's July 21, 1997 waiver of all claims for pension benefits from the fund, ought to be sufficient to allay any concerns defendant may have about the potential of multiple inconsistent obligations in this case.

Accordingly, on the record currently before this court, defendant is unable to show as a matter of law that it is entitled to withhold the contributions paid by plaintiff on behalf of Nash during the ten-year limitation period provided by the trust agreement. Therefore, this court will deny defendant's motion for summary judgment as it relates to plaintiff's claims for a refund of those contributions.

**B. Contributions paid between the effective date of ERISA and the start of the ten-year limitation period (January 1, 1975 to June 16, 1994)**

■ Defendant argues that the ten-year limitation provision in the trust agreement bars any claim by plaintiff for a refund of any contributions paid prior to June 16, 1984, which date marks the commencement of the limitation period. Plaintiff contends that the ten-year limitation provision of the trust agreement is inequitable and unenforceable under ERISA.

The parties agree that the standard governing whether the ten-year limitation provision is enforceable under ERISA is set forth in *Whitworth Brothers Storage v. Central States, Southeast & Southwest Areas Pension Fund*, 982 F.2d 1006 (6th Cir.1993). In that case, the court noted that " 'ERISA is governed by trust, not contract, law.' " *Id.* 982 F.2d at 1017 (quoting *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1250 (6th Cir.1991)). Accordingly, the mere fact that defendant included a ten-year limitation provision in the contract will not necessarily mean that the provision is enforceable. Accordingly, the Sixth Circuit noted that "the standard of review to be applied is whether [the] refund limitation rule is arbitrary and capricious as measured by equitable principles." *Id.* 982 F.2d at 1018. The court held that "a pension fund's refusal to refund contributions paid by mistake is arbitrary unless retention of the money is necessary to the financial soundness of the plan or justified by some other compelling reason." *Id.* 982 F.2d at 1017.

Defendant admits that it has offered no actuarial data to support its contention that the ten-year limitation is necessary to the financial stability of the fund. However, defendant contends that such evidence is not necessary in this case because it is able to demonstrate that the limitation provision is equitable without resort to such proof. Defendant relies primarily on *Jamail, Inc. v. Carpenters Dist. Council of Houston Pension & Welfare Trusts*, 954 F.2d 299 (5th Cir.1992), which the Sixth Circuit cited with approval in *Whitworth*, 982 F.2d at 1014–15. In that case, the trustees of certain pension trust funds adopted a policy limiting refunds to only those contributions mistakenly paid in the six month period prior to the date the trustees were notified of the claim. The court in *Jamail* noted that, in contrast, the funds were afforded four years in which to bring an action against employers for inadequate payments. The court went on to declare that "[j]ustice demands a directly reciprocal limit; recovery of underpayments and refund of overpayments should be possible for an equal period." *Jamail*, 954 F.2d at 305. In this case, defendant notes that a ten-

year limitation applies under the trust agreement for both recovery of underpayments and refund of overpayments. Defendant contends that this limitation provision satisfies the standard set forth in *Jamail*, and therefore is enforceable as supported by a "compelling reason," beyond the financial soundness of the plan.

However, this court rejects defendant's argument. First, defendant's reading of *Jamail* omits a significant portion of the court's reasoning in that case. After discussing the non-reciprocal limitation provisions, the court went on to note that:

> [t]he most egregious element of the refund policy, however, is its retroactive application. The Trust Funds had existed for years without a six month limit on refunds, and then the Trustees decided to adopt such a policy and apply it retroactively. Moreover, Jamail was not given notice of the new policy.... There may be situations in which the six month limitation could be a valid part of a refund policy. But not in this case, especially with its retroactive application.

*Id.* 954 F.2d at 305–06. It is clear from this language that an integral part of the court's analysis was the fact that the refund policy was retroactively applied without sufficient notice. That situation is not present in this case, making *Jamail*'s application to the facts of this case more questionable.

Second, the analysis of the Sixth Circuit in *Whitworth* makes clear that the central consideration in these circumstances is the impact of the refund provision on the financial stability of the plan. The court cited a number of cases in which the primary concern was the financial stability of the fund. For example, the *Whitworth* court cited *Dumac Forestry Serv., Inc. v. International Bhd. of Elec. Workers*, 814 F.2d 79 (2d Cir.1987), in which the Second Circuit held that a remand was required to determine whether a three-year limitation on refunds was arbitrary and capricious. Specifically, the court noted that:

[the] refund limitation rule must be evaluated in light of actuarial and other data considered by the trustees when they adopted the rule—data that were not part of the record before the district court. *Id.* 814 F.2d at 82–83. The Sixth Circuit also cited with approval *Peckham v. Board of Trustees of Int'l Bhd. of Painters and Allied Trades Union and Indus. Nat'l Pension Fund*, 719 F.2d 1063 (10th Cir.1983). In *Peckham*, the court held that it was an abuse of discretion for the trustees in that case to deny a refund. The court relied on the fact that the record contained "no evidence that the pension fund would be underfunded if the trustees returned plaintiffs' contributions." *Id.* 719 F.2d at 1066. The *Whitworth* court itself even went so far as to declare:

> We believe that unless a refund limitation policy is based on actuarial data and necessary to the pension fund's financial stability, it is not necessary for the protection of the property held under the trust agreement for the benefit of the employees, and is arbitrary and capricious. The fund is receiving a windfall and is unjustly enriched by refusing to return an employer's mistaken contributions when it no longer is obliged to pay pension benefits for the employee on whose behalf those contributions were made.

*Whitworth*, 982 F.2d at 1017.

While the Sixth Circuit did leave the door open for funds to show that retention of mistaken contributions can be justified by "some other compelling reason," given this authority, it would appear that this court's primary consideration ought to be the continued financial stability of the fund. In this case, there is no evidence in the record to support defendant's claim that the ten-year refund limitation policy is necessary to the continued financial soundness of the fund.[1] Accordingly, this court will deny defendant's motion for summary judgment as it relates to the claims for contributions paid between the effective date of ERISA and the beginning of the ten-year limitation period.

1. This court also notes that the total of the contributions paid prior to the commencement of the limitation period, including those contributions paid prior to the effective date of ERISA, appears to be only around $14,000. (*See* Pl.'s Resp.Br., Ex. 13.) Therefore, it is not at all clear that retention of these funds would be necessary for the continued financial stability of the fund.

### C. Contributions paid prior to the effective date of ERISA (October 1, 1961 to January 1, 1975)

In *Whitworth*, the Sixth Circuit was careful to delineate between claims concerning pre-ERISA contributions and post-ERISA contributions. The court noted that any claim for pre-ERISA contributions amounts to a state law claim for breach of contract. *See Whitworth*, 982 F.2d at 1012. The *Whitworth* court, relying on *Crews v. Central States, Southeast & Southwest Areas Pension Fund*, 788 F.2d 332 (6th Cir.1986), held that claims for pre-ERISA contributions which fell outside the limitations period clearly set forth in the parties' contract were barred under the terms of the contract. That portion of the *Whitworth* opinion applies equally to the claims related to pre-ERISA contributions in this case.

Accordingly, this court will grant defendant's motion for summary judgment related to plaintiff's claims for contributions paid on behalf of Nash prior to the effective date of ERISA.

### Conclusion

This court having reviewed the submissions of the parties and being fully advised in the premises,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is **DENIED in part and GRANTED in part** in accordance with the terms set forth in this opinion.

**IT IS FURTHER ORDERED** that the claims contained in plaintiff's complaint that relate to contributions paid to defendant on behalf of John Nash prior to January 1, 1975 are **DISMISSED with prejudice.**

**SO ORDERED.**