Dear Mayor Aubrey:
You have requested an opinion of this office regarding the following topics:
1. Hiring and Compensation of Reserve or Auxiliary Police Officers;
 2. The accumulation of compensatory time by the elected Chief of Police of Homer, Louisiana;
3. The payment of overtime for work not performed; and
4. The status of the Town of Homer Mayor's Court.
We will address each of these topics as outlined.
1. Hiring and Compensation of Reserve or Auxiliary Police Officers.
Under the Lawrason Act, the Chief of Police must make a recommendation to the Mayor and Town Council and obtain approval before hiring and firing full-time and part-time employees. In Attorney General Opinion 00-159, this office stated that "the appointment of reserve or auxiliary officers whether compensated or not must have the approval of the Board the same as other police personnel." (See also Opinion 99-48.)
Therefore, the Mayor and Town Council must approve the hiring of any auxiliary or reserve officers.
Once the officers are hired by the governing authority, they cannot be compensated without the approval of the governing authority. The issue was addressed in Attorney General Opinion 00-113, which concluded that when the governing authority appoints individuals as auxiliary police officers upon the Chief's recommendation as volunteers, they are hired only on that basis. They cannot be compensated without approval of the governing authority.
2. Accumulation of Compensatory Time by Police Chief.
This matter was addressed in Attorney General Opinion No. 00-503, dated January 17, 2001. In that opinion we stated:
 This office has recognized under the Fair Labor Standards Act, 29 U.S.C. § 210, that there are certain exemptions to the overtime compensation requirements that are found in 29 U.S.C. § 213. Therein it is provided in part as follows:
 (a) The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to —
 (1) any employee employed in a bona fide executive, administrative, or professional capacity * * *.
 The Courts have recognized that the FLSA requires employers to pay overtime compensation to employees who work more than 40 hours per regular work week, but excludes those employees working in a bona fide executive, administrative or professional capacity. In this regard the United States Court of Appeal in Lott v. Howard Wilson Chrysler-Plymouth, Inc., 203 F.3d 326 (5th Cir. 2000) observed as follows:
 Under 29 C.F.R. § 541.0, et seq., the Secretary of Labor has defined the terms executive, administrative, and professional, by setting out "long" tests for employees earning more than $155 per week but less than $250 per week, and "short" tests for employees earning more than $250 per week, * * * An administrative employee is an employee whose primary duty consists of office or nonmanual work directly related to management policies or general business operations for the employer or the employer's customers, which includes work requiring the exercise of discretion and independent judgment, 29 C.F.R. § 541.2 (e) (2), 541.2(e) (1).
 The exercise of discretion and independent judgment necessitates consideration and evaluation of alter-native courses of conduct and taking action or making a decision after the various possibilities have been considered. 29 C.F.R. § 541.207(a). This exercise of discretion and independent judgment must relate to matters of consequence. 29 C.F.R. § 541.207(ba)-(c)(1). Final decision making authority over matters of consequence is not necessary.
 The courts have stated that the decision of whether an employee is exempt under the Act is primarily a question of fact regarding the employment history and inferences based on these facts. Jamail, Inc. v. Carpenters Dist. Council, 954 F.2d 299 (5th Cir. 1992).
That opinion further stated that this office has a policy that it will not seek out the facts nor issue an opinion on questions of fact. A factual determination as to whether the Police Chief is or is not exempt under the FLSA as to overtime compensation has to be made by the governing authority based on the employment history of this office.
The opinion noted also that in Krecht, et al v. Board of Trustees,591 So.2d 690 (La. 1991), the court found that an employer may be required to give compensatory time for overtime to an employee who is otherwise exempted from FLSA coverage when the employer has established a policy that allows for compensatory leave. Therefore, additional consideration needs to be given to the issue of whether a policy exists as to overtime compensation for this office.
3. Granting Payment of Overtime for Work not Performed
You questioned whether the elected Chief of Police can grant additional hours if the Mayor's Court does not last four hours and can the officers be paid overtime for work not performed.
This matter was addressed in Louisiana Attorney General Opinion 86-652. The Opinion states as follows:
 "The payment of funds as wages for hours which have not been earned would be a donation of public funds. This is prohibited by Article VII, Section 14 of the Louisiana Constitution of 1974."
Therefore, our opinion as to this question is that officers cannot be paid overtime for work they did not perform.
4. The Status of the Town of Homer's Mayor's Court.
You asked if the Mayor's Court is a court of record and if they are required to report violations of traffic laws to the Department of Public Safety.
The Mayor's Court is not deemed a court of record, but it is a court established by the constitution of our state and possesses the inherent powers of courts. Sledge v. McGlathery, 324 So.2d 354.
Louisiana Revised Statute 32:393 C. (1)(a) and (b)state:
32:393 C. (1)(a):
 Every court in this state shall keep a full report of every case in which a person is charged with the violation of any provision of this chapter or any regulation of the department or the commissioner adopted pursuant thereto or any law of this state or of any municipal or parish governing authority lawfully established for regulating the operation of motor vehicles on highways. (Emphasis added.)
 32:393 C. (1)(b):
 If such person is convicted and sentenced thereupon, and such conviction is a final disposition as defined in R.S. 32:853 A(1)(a) or his bail is forfeited as a result of a final judgment of forfeiture or other final disposition be made, an abstract of the report, all parking convictions only excepted, shall be sent by the court, or the district attorney as the case may be, to the commissioner not later than 30 days after the date of such person's conviction and sentencing thereupon, forfeiture of his bail and final judgment of forfeiture, or the final disposition of his case. This report shall not be a court record. (Emphasis added.)
In Sledge v. McGlathery, 324 So.2d 354 (La. 1975), the Louisiana Supreme Court held that Mayor's Courts possessed the inherent power of courts. The Mayor's Courts are courts which have jurisdiction to conduct trials, determine guilt and impose sentences, including fines and imprisonment for breach of municipal ordinances.
Louisiana R.S. 33:441 states the Mayor's Court has jurisdiction over all violations of municipal ordinances. The Mayor may try all breaches of the ordinances and impose fines and imprisonment or both, provided for the infraction thereof. If the Mayor's Court has the authority to convict and sentence an individual for a violation of a municipal traffic ordinance, then they should also be responsible for making the report as required by LSA-R.S. 32:393. The statute does not exempt any court from the necessity of forwarding this report to the Department of Public Safety as required under 32:393.
It is the opinion of the Attorney General that the Mayor's Court as a constitutionally created court of this state, must send the reports required pursuant to 32:393 regarding the final disposition of traffic citations to the Department of Public Safety.
I hope that the foregoing discussion has adequately addressed your questions. If we can be of further assistance, do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 ______________________________ ARLENE D. KNIGHTEN Assistant Attorney General
RPI/ADK;dsc
Enclosures
Date Released: February 7, 2003
OPINION NUMBER 00-159
June 13, 2000
60 — Law Officers 77 — Officers R.S. 33:2201
The issuance by the Chief of Police of a commission as an honorary gesture does not need approval of the Board of Aldermen, but for an uncompensated reserve officer you must have approval.
Mr. Kenny P. Poche Chief of Police Town of Gramercy 120 North Montz Ave. Gramercy, La. 70052
Dear Chief Poche:
This office is in receipt of your request for an opinion of the Attorney General in regard to issuance of a Special Commission as Deputy by the Chief of Police. You ask whether the elected Chief of Police can issue a Special Commission without the approval of the Board of Alderman to appoint someone as a Special Deputy who would not receive a salary.
Pursuant to our telephone conversation we have been informed that you are interested in both an honorary commission for an individual who will have no law enforcement powers as well as a special deputy who is trained and has law enforcement power.
This office has recognized that reserve or auxiliary officers have the same authority as an ordinary peace officer, and those who have completed training may carry concealed firearms when "in the actual discharge of official duties subject to the regulations of the law enforcement agencies with which they are affiliated." Atty. Gen. Op. Nos. 95-143, 93-826. In Atty. Gen. Op. No. 95-143 the provisions of R.S. 33:2201(10) were quoted as follows:
 (10) . . . . . a reserve or auxiliary law enforcement officer shall be defined as a volunteer, non-regular, sworn member of a law enforcement agency who serves with or without compensation and has regular police powers while functioning as an agency's representative, and who participates on a regular basis in agency activities including, but not limited to those pertaining to crime prevention or control, and the preservation of the peace and enforcement of the law.
Therefore, in regard to an auxiliary law enforcement officer, whether compensated or not, we must conclude the appointment must have the approval of the Board of Aldermen as other police personnel. It is well settled in accordance with R.S. 33:423 that only the board of alderman may hire or fire police personnel upon the recommendation of the elected Chief of Police.
Moreover, it has been noted that a special police officer using unnecessary or excessive force or unlawful use of police powers by a special police officer during the performance of his duty rendered the municipality as employer liable for resulting injuries or damage. Atty. Gen. Op. No. 77-1160.
We find that an individual with an honorary commission is distinguishable from the auxiliary or reserve officer inasmuch as the former does not have any law enforcement authority, no police department duties, and cannot be considered as police personnel.
In Atty. Gen. Op. 95-143 this office responded to a request concerning the authority extended to private citizens by issuance of "commission cards" by local law enforcement agencies. Therein it was observed that there was no statutory definition of the phrase "commission card" and no specific authority for the issuance of such a card. However, it was concluded an individual does not have police authority notwithstanding the fact that a commission card may have been issued to him. A private citizen does not have the same authority as a law enforcement officer.
Consequently, we find that the issuance of a commission card to an individual as an honorary gesture does not need the approval of the Board of Alderman inasmuch as the elected chief of police is the final authority in the day-to-day operation of his office and equipment. We do not find that an individual with an honorary commission is an employee of the police department, and the issuance of the commission is an act in the day-to-day operation of the police department which does not need approval by the Board of Aldermen.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By:__________________________ BARBARA B. RUTLEDGE Assistant Attorney General
RPI/bbr
OPINION NUMBER 99-48
April 29, 1999
71 — MUNICIPALITIESLa.R.S. 33:362(A)(3) La.R.S. 33:423
All employees of the police department, including part-time and auxiliary officers, are included in the term "police personnel."
The board of alderman may create police personnel positions by ordinance, but the filling of the positions is done after recommendation by the chief of police and approval of the mayor and the board of alderman.
The Honorable Deano Thornton, Mayor City of Winnfield P.O. Box 509 Winnfield, Louisiana 71483
Dear Mayor Thornton:
Your request for an Attorney General's opinion has been forwarded to me for research and reply.
Specifically, you ask:
 1) Does the term "police personnel" as referred to in La.R.S. 33:423 include part-time non-civil service officers and auxiliary officers?
2) What is the procedure for appointing these officers?
The answers to both questions are found in La.R.S. 33:362(A)(3) and 33:423
which are as follows in pertinent part:
§ 362 Exercise of municipal powers; legislative, executive
 A.(3) Subject to law, including R.S. 33:423.2 and 423.3, and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees.
 § 423 Duties of marshal
 A. The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of this Part, R.S. 33:321 et seq., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel. Such nominations or recommendations are to be made regardless of race, color, disability, as defined in R.S. 51:2232(11), or creed.
 B. The provisions of Subsection A of this Section shall not be construed to limit or restrict the provisions of R.S. 33:423.3.
With regard to your first question, this office has repeatedly opined that all employees of the police department, including part-time and auxiliary officers, are included in the term "police personnel." Attached is Louisiana Attorney General Opinion No. 93-386 which deals with the administrative authority over the auxiliary police force and states, "This office has repeatedly recognized that in a Lawrason Act municipality, the elected chief of police has supervisory power and authority over police department personnel."
Your second question asks for the procedures for appointing officers. According to La.R.S. 33:362(A) the board of aldermen, "shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees." This provision is supplemented by La.R.S. 33:423 which states, "In those municipalities . . ., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, . . . ." Therefore, the board of aldermen may create police personnel positions by ordinance, but the filling of the positions is done after recommendation by the chief of police and approval of the mayor and the board of aldermen.
We trust this sufficiently answers your questions. However, if you should need further information, do not hesitate to contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________________ FRANCES J. PITMAN ASSISTANT ATTORNEY GENERAL
RPI/FJP/sc
OPINION NUMBER 00-113
April 25, 2000
77 — Officers — Local Muniicupal
When the governing authority appoints auxiliary police as vollunteers, they are "hired" only on that vasis and cannot be compensated without approval of the governing authority.
Hon. Manson J. Saltzman Mayor, Town of Gueydan 500 Main Street Gueydan, LA 70542
Dear Mayor Saltzman:
This office is in receipt of your request for an opinion of the Attorney General in regard to utilization of auxiliary police officers by the Chief of Police. You indicate the Town of Gueydan is a Lawrason Act municipality with an elected Chief of Police. Upon the recommendation of the Chief of Police the governing authority has employed several patrolmen, and has received a list of a number of individuals as "auxiliary police officers". The latter positions are not paid and are utilized on special occasions such as football games, traffic control, or to ride with a uniformed officer. They have also been used by the Chief of Police as substitute patrolmen without approval of the Mayor and Council, being paid minimum wage. A request for "overtime pay" for two auxiliary police officers was returned to the Police Department by the Mayor with instructions that he would not a sign a check for a person not approved by the Council and that an elected Chief could not be replaced by his own approval. The auxiliary officers had worked in the Chief's position.
Based upon these related facts your ask the following questions:
 1) Can an elected Chief of Police in a Lawrason Act municipality utilize an auxiliary officer to work in his place and be compensated;
 2) Can the elected Chief of Police utilize "auxiliary" police offices on a paid status without first obtaining approval from the Mayor and Board of Aldermen; and
 3) Is payment to these auxiliary officers upon the Chief of Police's request appropriate under either or both of these circumstances.
In Atty. Gen. Op. No 99-48 it was noted that this office has repeatedly opined that all employees of the police department, including part-time and auxiliary officers, are included in the term "police personnel." While it was recognized that the elected chief of police has supervisory power over the police department personnel, it was observed that the filling of positions are done after recommendation by the chief of police by approval of the mayor and board of aldermen. As recognized in Atty. Gen. Op. No. 83-731, the mayor and board of aldermen are generally empowered to hire all municipal employees, which included personnel for the police department, although they only have authority to appoint police personnel, including auxiliary police, subject to the recommendation of the chief of police.
It follows when the governing authority appoints an individual as an uncompensated auxiliary officer, there is no authority without the approval of the mayor and board of aldermen to have those appointed personnel, compensated. While the Chief of Police supervises his department, the mayor and board of aldermen "hire" municipal personnel, and the Chief of Police cannot authorize an auxiliary officer to do any work for compensation without approval from the Mayor and Board of Aldermen.
Moreover, this office has concluded that an elected chief of police is a full time position as an official and not an employee of the municipality. He is not permitted vacation time allowed municipal employees, Atty. Gen. Op. Nos. 85-25, 85-766. Vacation leave for an elected chief of police is a matter to be granted by the governing authority, Atty. Gen. Op. Nos. 96-69, 91-88.
Therefore, it must be concluded when the governing authority appoints individuals as auxiliary police officer upon the Chief of Police's recommendation as volunteers, they are "hired" only on that basis. They cannot be compensated without approval of the governing authority.
We hope this sufficiently responds to your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: __________________________ BARBARA B. RUTLEDGE Assistant Attorney General
RPI/bbr
OPINION NUMBER 00-503
January 17, 2001
 Syllabus
58 — Labor — Labor Laws 29 U.S.C. § 210
While FLSA requires employers to pay overtime to employees who work more than 40 hours per regular work week, those employees working in a bona fide executive, administrative or professional capacity are excluded.
Mr. Reynold Minsky President, Board of Commissioners Fifth Louisiana Levee District 222 North Cedar Street Tallulah, LA 71282
Dear Mr. Minsky:
This office is in receipt of your request for an opinion of the Attorney General in regard to payment of compensatory time claimed by the Superintendent of the Fifth Louisiana Levee District.
This office has recognized under the Fair Labor Standards Act,29 U.S.C. § 210, that there are certain exemptions to the overtime compensation requirements that are found in 29 U.S.C. § 213. Therein it is provided in part as follows:
 (a) The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to —
 (1) any employee employed in a bona fide executive, administrative, or professional capacity * * *.
The Courts have recognized that the FLSA requires employers to pay overtime compensation to employees who work more than 40 hours per regular work week, but excludes those employees working in a bona fide executive, administrative or professional capacity. In this regard the United States Court of Appeal in Lott v. Howard WilsonChrysler-Plymouth, Inc., 203 F.3d 326 (5th Cir. 2000) observed as follows:
 Under 29 C.F.R. § 541.0, et seq., the Secretary of Labor has defined the terms executive, administrative, and professional, by setting out "long" tests for employees earning more than $155 per week but less than $250 per week, and "short" tests for employees earning more than $250 per week, * * * An administrative employee is an employee whose primary duty consists of office or nonmanual work directly related to management policies or general business operations for the employer or the employer's customers, which includes work requiring the exercise of discretion and independent judgment, 29 C.F.R. § 541.2(e)(2), 541.2(e)(1).
 The exercise of discretion and independent judgment necessitates consideration and evaluation of alternative courses of conduct and taking action or making a decision after the various possibilities have been considered. 29 C.F.R. § 541.207(a). This exercise of discretion and independent judgment must relate to matters of consequence. 29 C.F.R. § 541.207(ba)-(c)(1). Final decision making authority over matters of consequence is not necessary.
The courts have stated that the decision of whether an employee is exempt under the Act is primarily a question of fact regarding the employment history and inferences based on these facts. Jamail,Inc. v. Carpenters Dist. Council, 954 F.2d 299 (5th Cir. 1992).
This office has a policy that it will not seek out the facts nor issue an opinion on questions of fact.
However, with regard to your question we find it pertinent to note that in Atty. Gen. Op. 98-114 this office recognized that the court inKnecht, et al v. Board of Trustees, 591 So.2d 690 (La. 1991) found that an employer may be required to give compensatory time for overtime to an employee who is otherwise exempted from FLSA coverage when the employer has established a policy that allows for compensatory leave. It was observed that the Board's actions lead the plaintiffs to reasonably expect that they would receive paid leave for the hours of overtime pursuant to the leave policy, such an obligation having been implied.
We have set forth certain guidelines recognized by the court, and hope this will be of assistance to you with regard to your question.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ____________________________ BARBARA B. RUTLEDGE Assistant Attorney General
RPI/bbr
OPINION NUMBER 86-652
January 5, 1987
71 Municipalities 77 Officers
Article VII, Section 14 of the Louisiana Constitution of 1974, LSA-R.S. 33:404, LSA-R.S. 14:138
Payment of wages for hours not worked is in contravention of Louisiana Constitution. The mayor is the chief municipal administrative officer and given the authority to supervise and direct the day to day operation of all municipal departments and agencies.
Mr. Dorman L. Guilliams Director of Public Works Post Office Box 509 Winnfield, Louisiana 71483
Dear Mr. Guilliams:
You requested an opinion from this office concerning the powers and authority of the members of the board of aldermen for the City of Winnfield.
First of all you questioned the payment of wages to employees for forty hours when the time cards do not indicate that the employees have worked forty hours.
Article VII, Section 14 of the Louisiana Constitution of 1974, addresses the donation of public property and funds. It provides, in pertinent part, as follows:
 Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, of things of value of the state or of any political subdivision shall not be banded, pledged, or donated to or for any person, association, or corporation. public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
The payment of funds as wages for hours which have not been earned would be a donation of public funds. This is prohibited by Article VII. Section 14 of the Louisiana Constitution of 1974. Therefore, it is the opinion of this office that payment of funds, as wages, to employees for a forty hour work period when the employees have not worked the forty hours is in contravention of Article VII. Section 14 of the Louisiana Constitution of 1974.
LSA — R.S. 14:138 of the Criminal Code addresses the crime of Public Pay Roll Fraud. It provides:
Public payroll fraud is committed when:
 (1) Any person shall knowingly receive any payment of compensation, or knowingly permit his name to be carried on any employment list or pay roll for any payment of compensation from the state, for services not actually rendered by himself, or for services grossly inadequate for the payment or compensation received or to be received according to such employment list or pay roll; or
 (2) Any public officer or public employee shall carry, cause to be carried, or permit to be carried, directly or indirectly, upon the employement list or pay roll of his office, the name of any person as employee, or shall pay any employee, with knowledge that such employee is receiving payment or compensation for services not actually rendered by said employee or for services grossly inadequate for such payment or compensation.
 This article shall not apply in a situation where a bona fide public officer or public employee, who is justifiably absent from his job or position for a reasonable time, continues to receive his usual compensation or a part thereof.
 Whoever commits the crime of public pay roll fraud shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than two years, or both.
As indicated in the statute quoted above, public pay roll fraud is committed when any public officer pays any employee compensation for services not actually rendered by the employee. Thus, not only is the payment of the questioned wages in violation of the Louisiana Constitution, but such payment is a crime punishable by the payment of a fine or imprisonment.
The remainder of your questions concerned the authority of the members of the council to direct city employees to perform job related tasks and dictate operational procedures for the employees, such as determining work schedules. LSA-R.S. 33:404 addresses the duties and powers of a Lawrason Act mayor. The provision gives the mayor supervisory and administrative authority of all departments and agencies other than a police department with an elected chief of police. It provides, in pertinent part, as follows:
 A. The mayor shall have the following powers, duties, and responsibilities:
 (1) To supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law. All administrative staff shall be subordinate to the mayor.
 (2) To delegate the performance of administrative duties to such municipal officers or employees as he deems necessary and advisable.
 * * * * * * * * * (9) To have any other power or perform any other duty as may be necessary or proper for the administration of municipal affairs not denied by law.
The mayor is the chief municipal administrative officer and is given the authority to supervise and direct the day to day operation of all municipal departments and agencies. This administrative authority includes the authority to delegate and direct the performance of duties and job related tasks and to determine and establish day to day operational procedures such as work schedules. Thus, it is the mayor who possesses these administrative powers and authority and not the members of the municipal board of aldermen.
It is hoped that this opinion has been of some assistance to you. If we may be of any further assistance, please feel free to contact us.
Sincerely,
 WILLIAM J. GUSTE, JR Attorney General
 BY: __________________________ CASSANDRA A. SIMMS Assistant Attorney General